JOHNSTON SEED CO. et al. v. UNITED
STATES et al.
No. 4181.

United States Court of Appeals
Tenth Circuit.
Aug. 18, 1951.

·H. Russell Bishop, Washington, D. C. (R. C. Jopling, Jr., Oklahoma City, Okl., C. J. Harris, Enid, Okl. and H. D. Driscoll, Washington, D. C., on the brief), for appellants.

Samuel R. Howell, Asst. Chief Counsel, Washington, D. C. (Daniel W. Knowlton, Chief Counsel, Washington, D. C., on the brief), for appellee Interstate Commerce Commission.

Hodges, Vidal & Goree, Denver, Colo. and Harry E. Boe, Chicago, Ill., on the brief, for appellees Atchison, & S. F. Ry. Co. et al.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

Johnston Seed Company, acting in its own behalf and as successor in interest to Goodholm-Maund Grain Company, and Palacek Mills, brought this action against the United States to annul and set aside an order of the Interstate Commerce Commission fixing for the future rates to be charged for the transportation of mung beans; providing transit arrangements and charges on such beans; denying reparation; and authorizing waiver of collection of outstanding undercharges. A copy of the order of the Commission was attached to and made part of the complaint. The United States answered. The Commission, and the railway companies who were parties to the proceeding before the Commission, or their successors in interest, intervened. Trial was had at which a transcript of the hearing in the proceeding before the Commission was introduced in evidence. Judgment was entered dismissing the action, 90 F.Supp. 358; and plaintiffs appealed.

The order presently challenged was entered in a proceeding pending before the Commission in which Johnston Seed Company and Goodholm-Maund Grain Company charged that they were engaged in business at Enid, Oklahoma; that among other things they purchased, stored, processed, sold, and shipped mung beans by rail from points of origin in Oklahoma, Kansas, and Missouri, to points of destination in various parts of the United States, except the southern territory; that the rates charged for transportation, including transit, of mung beans had been and would in the future continue to be unreasonable and inapplicable. The complainants prayed that the Commission fix rates for the future on the basis of 112 per cent of the rates on grain; prescribe reasonable transit arrangements and charges; and grant reparation. Palacek Mills intervened and sought like relief. After a full hearing and other intermediate procedure, the Commission entered the order in which it fixed for the future rates on mung beans not to exceed 112 per cent of the rates on grain; provided that transit arrangements and charges on dried beans, lentils, and peas should be applicable to mung beans; determined that the rates previously charged on mung beans were not shown to be unreasonable; denied reparation; and authorized waiver of collection of any outstanding undercharges.

Appellants do not challenge that part of the order fixing rates for transportation of mung beans in the future. Neither do they attack that part relating to transit arrangements and charges. They complain only of the part denying reparation on the ground that the rates previously charged were not shown to have been unreasonable. It is contended in respect to such part of the order that the Commission failed to make essential findings of fact which would rationally support it. The argument is that in a case involving reparation the Commission must find what rate was charged, whether the rate charged was the applicable rate, whether the applicable rate was reasonable, if the applicable rate was not reasonable what was a reasonble rate, whether the rate charged was higher than the applicable rate or the reasonable rate if the applicable rate was not reasonable, and whether the action is barred by the statute of limitations; and that having determined all of such subsidiary questions, decide whether reparation should be awarded. It is said that the Commission stopped half-way in this case; that it found the rates which had been charged were those applicable to dried

beans, edible, not otherwise indexed by name; that it further found the rates assailed were inapplicable; that logically and legally the next finding required was a finding as to what rate was applicable; and that the Commission failed to make such finding. It may be said generally that basic findings appropriate to support an order granting or denying reparation are essential. State of Florida v. United States, 282 U.S. 194, 51 S.Ct. 119, 75 L.Ed. 291; United States v. Baltimore & Ohio Railroad Co., 293 U.S. 454, 55 S.Ct. 268, 79 L.Ed. 587; United States v. Chicago, Milwaukee, St. Paul & Pacific Railroad Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023. But the Commission is not required to make formal findings of fact in separately numbered paragraphs in like manner to that formerly required of courts by Equity Rule 70½, 28 U.S.C.A.Appendix, or now required by Rule of Civil Procedure 52, 28 U.S.C.A. It is enough if they appear in the form of a statement in the report and order of the Commission. Chicago, Burlington & Quincy Railroad Co. v. United States, D.C., 60 F.Supp. 580; Beard-Laney Inc., v. United States, D.C., 83 F.Supp. 27, affirmed 338 U.S. 803, 70 S.Ct. 64, 94 L.Ed. 486.

 There is no rule of thumb readily available in every case for quick and easy solution of the question whether the basic findings made by the Commission were adequate and sufficient to support a final order granting or denying reparation. The question must be determined in each instance with appropriate regard for the inherent nature of the proceeding and with suitable regard for the four corners of the findings. In its report in the proceeding presently under consideration, the Commission stated the existence of these facts. Mung beans—of Oriental origin with their initial appearance in the United States approximately twenty years ago—are produced in Oklahoma, Kansas, and Missouri. In Oklahoma in 1942, 1943, and 1944, there were produced 90,000, 105,000 and 183,333 bushels, respectively. They are commonly planted with a wheat drill, or a regular lister, and they are harvested with a grain combine. They are handled through the same elevators and in much the same manner as wheat. And they weigh the same per cubic foot as wheat. They do not contain any matter deleterious or poisonous to humans, but they are not a palatable item of human diet, such as black-eyed peas, or dried navy, pinto, or lima beans. In some countries they are used directly for human consumption, but not in the United States. About one-half of the marketed volume in this country is used for the production of bean sprouts, and the sprouts are used in the preparation of chop suey, chow mein, and other foods. They are also used as an ingredient for poultry or stock food, and they have value for soil-building. They are known commercially as dried beans. They are shipped in one-hundred-pound jute or heavy cotton bags, and most of the traffic moves by rail or motor truck. Most of the traffic under consideration moved from points of origin in Oklahoma to Enid for cleaning, grading, or storing, and thence by rail to factories for processing or to wholesale distributors at various localities including the cities of Chicago, Detroit, Philadelphia, New York, Boston, Los Angeles, and San Francisco; and most of the shipments moved in cars without grain doors although good loading practice requires the use of two or four doors to a car. The average price which complainants received for the beans during the years under consideration was $8.00 per hundred pounds, delivered at destination. The beans were not specifically named in the consolidated freight classification or exemptions thereto, and the carriers collected charges on the shipments made by complainants at the rates applicable to dried beans, edible, not otherwise indexed by name in the classification. Rule 17 of the Consolidated Freight Classification, promulgated by the Commission, provides that when articles not specifically provided for, nor embraced in the classification of articles, are offered for transportation, carriers will apply the classification provided for articles which in their judgment are analogous. The finding of the Commission that the rates charged prior to the promulgation of the

order were not shown to have been unreasonable amounted to an affirmative finding that such rates were reasonable. And in view of the specific findings including those indicating the marked similarity between mung beans and other species of dried beans known commercially and specifically provided for in the consolidated freight classification, the ultimate finding that the rates charged for mung beans were reasonable must be construed as intended by the Commission to be a finding that such rates were properly used under the so-called analogous-article rule. The Commission could not have found the applicable rates, except by analogy, for no other rates existed. The contention that the findings of the Commission were insufficient rationally to support that part of the order denying reparation is lacking in merit.

 Complaint is made that the findings of the Commission were directly contrary to the evidence, and were arbitrary and capricious. The argument in support of the contention is that the finding that the rates charged on mung beans were not shown to have been unreasonable is contrary to the evidence. In view of the dissimilarity among cases of this kind involving reparation, no good purpose would be served by detailing the evidence at length. The finding was in the nature of a factual conclusion based upon an evaluation of the entire record. It was not a finding susceptible of demonstration with arithmetical exactness by specific reference to uncontroverted evidence. But it represented the considered judgment of the Commission. We are unable to say that it was contrary to the evidence, that it was not adequately supported by substantial evidence, or that it was arbitrary or capricious. And in a proceeding of this kind it is not the province of the court to substitute its judgment for that of the Commission in respect to a question of this nature. Expediency or wisdom of the order are not elements for consideration. The field for exertion of the judicial function is exhausted when it appears that there was rational basis for the intelligent finding or conclusion of the Commission. Virginian

Railway Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463; Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260.

The judgment is affirmed.