**CAPITOL PACKING COMPANY, Fryer and Stillman, Inc., Pepper Packing Company, Lasco, Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

Civ. 5567.

United States District Court
D. Colorado.

Sept. 23, 1958.

John D. Saviers, and Louis E. Eagan, Aurora, Colo., for plaintiffs.

Robert W. Ginnane, Charlie H. Johns, Jr., and Arthur J. Cerra, Washington, D. C., for the Interstate Commerce Commission.

Victor R. Hansen, James E. Kilday, Colin A. Smith, Washington, D. C., and Donald E. Kelley, Denver, Colo., for United States.

ALFRED A. ARRAJ, District Judge.

This is an action challenging the validity of the report and order of the Interstate Commerce Commission dated September 19, 1955, encompassing the issues raised in Docket No. 30710 Sub–No. 24, which was heard as part of the proceedings entitled Rath Packing Co. et al. v. Ahnappe and Western Railway Co. et al., Docket No. 30710, reported at 296 I.C.C. 693. For a proper understanding of the issues involved herein, it will be necessary to trace briefly the background under which this dispute arose.

Plaintiffs here are packing companies and a substantial portion of their business consists of shipping fresh meat between Denver and the eastern United States via railroad. In 1930 the Interstate Commerce Commission issued a decision and order, reported as Western Trunk Line Class Rate Case, 164 I.C.C. 1, 200, which established zones and boundary lines for Western Trunk Line Territory for purposes of establishing rates to be charged by the railroads. Zone 1 of Western Trunk Line Territory was described fully, with St. Louis being on the boundary line, and illustrated by a map at Appendix G of that case. In 1947 and 1948 the Commission, in two emergency orders, Ex Parte 166, 270 I.C.C. 403, 456, and Ex Parte 168, 276 I.C.C. 9, 113, allowed the railroads to increase their western rate factor by adding to the base rate increases of 20% and 8% for goods traveling from one point within Western Territory to another point within Western Territory other than Zone 1, and increases of 22½% and 9% for goods traveling from one point within Western Territory (other than Zone 1) to a point within Zone 1. Although it was clear under the 1930 decision that St. Louis, being on the boundary, was not to be treated as within Zone 1, the ex parte increases made no provision concerning the treatment of border points. Thereafter the railroads treated St. Louis as a point within Zone 1 for purposes of calculating the authorized increases, and applied their published tariffs, with the higher rate, to plaintiffs' goods traveling between Denver and St. Louis.

This action of the railroads in treating St. Louis as within Zone 1 was challenged before the Commission, and in its decision, Increased Freight Rates, 1947, 279 I.C.C. 303 (referred to as the Border Point case), the Commission noted that the railroads had departed from the usual rule regarding treatment of border points but also stated that,

"The treatment of border points is not specifically dealt with in the reports in Ex Partes Nos. 166 and 168, except (as to Cairo, Ill.)."

The Commission found that the increased rates arrived at by treating St. Louis as within Zone 1,

"* * * have resulted in rates which are, and for the future will be, unjust and unreasonable and unduly prejudicial to the extent that they exceed the rates hereinafter prescribed as maximum reasonable rates for the future, and our previous findings in Ex Parte No. 166 and 168 are hereby modified accordingly."

The Commission then set out new rate increases arrived at by applying the usual rule. Apparently, the Commission adopted the view in the (Border Point) decision that, inasmuch as the railroads were not specifically bound to any particular rule regarding treatment of border

points by the two ex parte orders, they (the railroads) were free to apply a different rule to the increases and disregard the usual rule, until such time as the Commission specifically ordered otherwise.

In their complaint before the Commission, plaintiffs sought, as reparations from certain railroads, the difference between the rates arrived at by regarding St. Louis as on the boundary of Zone 1 and the rates arrived at by regarding St. Louis as within Zone 1, for the period between the dates the increases were authorized and the date of the Commission's decision in the Border Point case. There was no dispute over rates charged prior to the ex parte increases or subsequent to the Border Point case.

Plaintiff alleged that the rate increases applied, by the defendant railroads were in violation of Sections 1(5), 3(1) and 6 (7) of the Interstate Commerce Act. Sec. 1(5) prohibits unjust and unreasonable rates, and Sec. 3(1) makes unlawful rates that give any undue or unreasonable preference or advantage. However, plaintiffs did not urge these grounds before the Commission, but relied on the argument that the rates were inapplicable under Sec. 6(7), which prohibits charging higher rates than those in effect at the time. Plaintiffs contended that the rates charged were inapplicable and therefore unlawful because they violated the Commission orders in the Western Trunk Line Class Rate Case, supra, and the two ex parte orders. By its report and order of September 19, 1955, the Commission found that the rates assigned were not shown to have been or to be inapplicable, unjust, unreasonable, or otherwise unlawful, and plaintiff's complaint together with the several other complaints contained in Docket No. 30710 were dismissed. The Commission found that the Border Point case modified rather than affirmed the two ex parte cases and that therefore the rates imposed prior to the Border Point case were not inapplicable.

This case was originally assigned to a specially constituted District Court of 3 Judges. Defendant's Answer asserted that it was not a proper action for consideration by a 3 Judge District Court and upon hearings duly had the 3 Judge Court sustained defendant's contention and the 3 Judge Court was dissolved.

The defendant, the U. S. A., did not oppose the Commission's order and did not participate in its defense. The position of the Commission is that the order challenged by plaintiffs is valid and lawful in all respects and asks that plaintiffs' complaint be dismissed.

Plaintiffs now advance two major grounds for remanding the case to the Commission. First, plaintiffs contend that the Border Point case did not modify prior orders because St. Louis was prescribed as a border point at all times during the period complained of by orders in existence prior thereto, and that the order is arbitrary, unreasonable and null and void because the Commission applied the decisions in the Border Point, supra, and Hormel, infra, cases retrospectively. Second, plaintiffs contend that the Commission failed to make essential findings of fact to support its order.

Assuming that St. Louis had previously been prescribed as a border point in Commission orders, it should be noted that the ex parte orders did not expressly include any rule or order regarding treatment of points on the boundary of a zone. Ex Parte 168, supra, quoted and relied on by plaintiffs, says,

"Cairo, Illinois, should be treated as a border point between the east and the southwest rather than as a point within eastern territory. Zone 1 of Western Trunk-Line Territory adjoins eastern territory on the west and its northern, western and southern limits are as defined in our decision in Western Trunk Line Class Rates, 164 I.C.C. 1, at page 200, and in the map opposite page 248."

Granting plaintiffs' claim that this is a binding order, yet it merely determines boundaries and says nothing concerning treatment of points on those boundaries.

In its decision in this case, the Commission, at pages 710–711, said,

"Following the decisions in Ex Parte Nos. 166 and 168, the carriers, in publishing rates reflecting the increases therein authorized, treated St. Louis, a point on the border of western territory and Zone 1 of western trunk line territory, hereinafter called Zone 1, as a point entirely within Zone 1. * * * In the Border Point case it was found that the carriers had departed from the usual rule regarding the treatment of border points, which is that points on territorial boundary lines are to be treated as within the territory of which the line forms the boundary and prescribed rates which became effective on February 1, 1951, from and to various border points based on that rule.

"In Geo. A. Hormel & Co. v. Union Pac. R. Co., 289 I.C.C. 691, in which the complainants in the instant proceeding were permitted to intervene, division 2, in dealing with this same question, said at page 697:

"It is clear that the rates prescribed in the proceeding referred to (the Border Point case) were for future application only, and that the Commission for the future modified in certain respects, rather than affirmed, its finding unconditionally made. Recognition of such a modification as a basis for an award of reparation has no justification.

"That statement is applicable also to the applicability issue before us here."

██ The issue here then is: Was the Commission obliged to give general application to one of its own rules, or could it restrict that rule's application. Obviously there is no general rule of law as to which zone a border point shall be considered a part. The decision is at best an arbitrary one, and clearly one peculiar to the field of law in which the problem happens to arise. Certainly, this initial decision and rule was clearly a matter for the Commission, in accordance with its broad powers of rate-making. It therefore follows that whether any such rule or policy, once made, is to have general application within the field of rate-making or restricted application to the set of rates for which it was originally designed is also a matter for the Commission to decide. This is so because the fixing of rates, the determination as to what rates are applicable, and the consistency of the Commission's findings with those made by it in other cases are matters for the Commission alone. See Virginian Ry. Co. v. United States, 1926, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L.Ed. 463; I. C. C. v. Union Pac. R. R. Co., 1912, 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; New Process Gear Corp. v. New York Central R. Co., 2 Cir., 1957, 250 F.2d 569. This Court is aware of no general rule of law, in either the cases or the statutes, which prevents the Commission from setting forth different rules for applying different sets of rates, subject only to the statutory requirements that the rates, once arrived at, must be reasonable, just, and nondiscriminatory, 49 U.S.C.A. §§ 1(5), 3(1), 6(7). The Commission made its decision in this case by refusing to give the original rule general application. We are of the opinion that it was within the power of the Commission to make this decision, and, having done so, this Court cannot reverse that decision or substitute another.

██ Concerning the application of the Hormel and Border Point cases, it seems clear from a reading of those cases that they were pertinent to the issues in the instant case. The Border Point case was a rehearing of Ex Parte 166 and Ex Parte 168, on which plaintiffs rely so heavily, and, as stated by the Commission, it modified those cases for future application by applying the rule urged by the plaintiffs to the increases set forth. Plaintiffs cannot properly rely on an original case, and, at the same time, not consider a rehearing which modified the original case.

■ The Hormel case was cited below by the Commission as having considered, and resolved, the same central issue raised in this case, namely, the effect of the Border Point case. Plaintiffs seem to contend here that these two cases should not have been considered by the Commission because they were not mentioned by plaintiffs and the defendants offered no evidence before the Commission. As was said by this Court in Ward Transport v. United States, 125 F.Supp. 363, 368, affirmed 1954, 348 U.S. 979, 75 S.Ct. 570, 99 L.Ed. 762,

"The Commission is an expert body within its field. Part of that experience comes from its experience in previous cases. Certainly, in our opinion, the Commission has the right to refer to experience in other cases as a guide for the application of its expert knowledge in a particular case."

See also United States v. Pierce Auto Lines, 1946, 327 U.S. 515, 530, 66 S.Ct. 687, 90 L.Ed. 821. We believe the Commission properly determined that the Border Point and Hormel cases were dispositive of the issues in this case.

■ This brings us to plaintiffs' second grounds for challenging the Commission's decision below, namely that the Commission failed to make essential findings of fact. As pointed out by the Commission in its brief before this Court, Sec. 14(1) of the Interstate Commerce Act requires only,

"That whenever an investigation shall be made by said commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusion of the commission, together with its decision, order, or requirement in the premises; and in case damages are awarded such report shall include the findings of fact on which the award is made."

Following this, the Courts have held that the Commission is not required to make formal and precise findings of fact except where damages are awarded.

United States v. Baltimore & O. R. Co., 1935, 293 U.S. 454, 464, 55 S.Ct. 268, 79 L.Ed. 587; Manufacturers R. Co. v. United States, 1918, 246 U.S. 457, 489–490, 38 S.Ct. 383, 62 L.Ed. 831. See also, 5 U.S.C.A. § 1007(b). The most frequently cited rule regarding the findings necessary to support a Commission order is that contained in Alabama G. S. R. Co. v. United States, 1951, 340 U.S. 216, 228,. 71 S.Ct. 264, 272, 95 L.Ed. 225, where the Supreme Court said,

"The statute requires the Commission only to file a written report, stating its conclusions, together with its decision and order. * * * Of course § 14(1) does not relieve the Commission of the duty to make the 'basic' * * * findings essential to the statutory validity of an order. * * * And the basic findings essential to validity of a given order will vary with the statutory authority invoked and the context of the situation presented."

In this case, the Commission stated the issue, cited its own prior decisions disposing of that issue, and concluded with the following finding,

"We find that the rates assailed are not shown to have been or to be inapplicable, unjust, unreasonable, or otherwise unlawful."

This finding covers the grounds on which the rates were challenged by the plaintiffs, and is sufficient to support the Commission's order denying reparation. See Chicago, Burlington & Quincy R. R. Co. v. United States, D.C.Ky.1945, 60 F.Supp. 580; Johnston Seed Co. v. United States, 10 Cir., 1951, 191 F.2d 228.

Concerning plaintiffs' contention that the Commission failed to make specific findings on other matters, as was said in Ward Transport v. United States [125 F. Supp. 368.] supra.

"* * * * it seems sufficient to say that the Commission by its positive findings impliedly made the negative findings which the companies insist should have been made."

Therefore, it is the conclusion of this Court that the Commission's decision contained all the findings and conclusions necessary to decide and dispose of the case; that the evidence supports the findings of the Commission, and that the Commission committed no error of law.

It is deemed that this opinion sufficiently states the Findings of Fact and Conclusions of Law of the Court in con-. formance with Rule 52 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Further or additional Findings and Conclusions are, therefore, not necessary.

Counsel for defendant Interstate Commerce Commission will submit to the Court within 10 days from the date hereof a judgment in accordance with this opinion.