# CONSOLO *v.* FEDERAL MARITIME COMMISSION
## ET AL.

No. 63.   Argued December 6–7, 1965.—Decided March 22, 1966.

*Robert N. Kharasch* argued the cause for petitioner. With him on the briefs were *William J. Lippman* and *Amy Scupi.*

*Richard A. Posner* argued the cause for the Federal Maritime Commission and the United States, *pro hac vice,* by special leave of Court. With him on the briefs were *Solicitor General Marshall, Assistant Attorney General Turner, Irwin A. Seibel, Milan C. Miskovsky* and *Walter H. Mayo III.*

*J. Alton Boyer* argued the cause for respondent Flota Mercante Grancolombiana, S. A. With him on the brief was *Odell Kominers.*

Mr. Justice White delivered the opinion of the Court.

We have been asked, in this case, to determine whether the Court of Appeals had jurisdiction to set aside a reparation order of the Federal Maritime Commission which was before it upon the consolidated appeals of the shipper and the carrier, the shipper asking that the award be increased and the carrier asking that it be set aside. In addition, we have been asked to determine whether the Court of Appeals applied the proper standard of review when it set aside the reparation award. We answer the first question in the affirmative and the second in the negative. Accordingly, we reverse.

Flota Mercante Grancolombiana, S. A. (Flota) is a common carrier engaged in carrying bananas from South America to the United States. In July 1955, it entered into an exclusive two-year carrying contract with Panama Ecuador, a banana shipper, and gave Panama Ecuador an option to renew the contract for an additional three years, subject to its meeting the rate offered by any other shipper. This exclusive contract was executed after the Federal Maritime Board, in June 1953, had ruled that Flota's competitor, Grace Line, was a common carrier of bananas and had violated the Shipping Act, 1916, §§ 14 Fourth[1] and 16 First,[2] by refusing

---

[1] "§ 14 Fourth. [No common carrier by water shall] Make any unfair or unjustly discriminatory contract with any shipper based on the volume of freight offered, or unfairly treat or unjustly discriminate against any shipper in the matter of (a) cargo space accommodations or other facilities, due regard being had for the proper loading of the vessel and the available tonnage; (b) the loading and landing of freight in proper condition; or (c) the adjustment and settlement of claims." 39 Stat. 733, as amended, 46 U. S. C. § 812 (1964 ed.).

[2] "§ 16 First. [It shall be unlawful for any common carrier by water] To make or give any undue or unreasonable preference or advantage to any particular person, locality, or description of traffic in any respect whatsoever, or to subject any particular person,

to allocate its banana shipping space equitably among all qualified shippers.[3]   In April 1957, the Board reiterated its view that Grace Line had violated the Shipping Act by signing exclusive carrying contracts and it ordered Grace Line to offer to all qualified shippers, upon a fair basis, shipping space on forward-booking contracts not to exceed two years in length.[4]   One month after this ruling Flota rejected a bid by Consolo, a banana shipper competing with Panama Ecuador, for the entire shipping space and honored the option given Panama Ecuador by executing to it a three-year exclusive carrying contract. Shortly thereafter Consolo demanded a "fair and reasonable" amount of the carrying space pursuant to the previous *Grace Line* decisions of the Board and threatened to file a complaint if its demand were rejected.   Flota rejected the demand and itself filed a petition before the Board for declaratory relief exonerating it from liability to Consolo.   Consolo followed with a complaint before the Board asking for damages.   These proceedings were consolidated and, in June 1959, the Board ruled that Flota's three-year exclusive contract with Panama Ecua-

---

locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever . . . ."   39 Stat. 734, as amended, 46 U. S. C. § 815 (1964 ed.).

[3] *Philip R. Consolo* v. *Grace Line Inc.*, 4 F. M. B. 293 (1953). No order was issued pursuant to this report.

[4] *Banana Distributors, Inc.* v. *Grace Line Inc.*, 5 F. M. B. 278 (1957).   This decision predicated liability upon the theory that bananas were "susceptible to common carriage" and could be carried by a carrier only under terms of common carriage.   This decision was reversed and remanded by the Second Circuit, 263 F. 2d 709.   On remand the Board dropped its "susceptibility" theory but nevertheless found Grace Line to be a common carrier under the Shipping Act and held it could not evade the requirements of the Act as to any part of the goods it carried.   5 F. M. B. 615 (1959).   This was affirmed by the Second Circuit upon appeal.   280 F. 2d 790, cert. denied, 364 U. S. 933.

dor violated the Shipping Act, §§ 14 Fourth and 16 First, and it ordered Flota to allocate its space fairly among all qualified banana shippers.[5]  Pursuant to § 2 (c) of the Administrative Orders Review Act (64 Stat. 1129, as amended, 5 U. S. C. § 1032 (c) (1964 ed.)), Flota petitioned the Court of Appeals for the District of Columbia Circuit to set aside this order.  This appeal was stayed, pending determination of the reparations proceeding.  In March 1961, the Board ordered Flota to pay Consolo certain reparations for the violation of the Shipping Act.[6] Both Flota and Consolo appealed from this reparation order and each intervened in the appeal of the other, Consolo asking that the reparation award be increased and Flota asking that it be set aside.  These appeals were consolidated together with Flota's appeal to set aside the Board's finding of a violation of the Shipping Act.

The Court of Appeals held that it had jurisdiction to consider these appeals.  It affirmed the Board's finding that Flota had violated the Shipping Act but remanded to the Board the issue of reparations so that it could "consider whether, under all the circumstances, it is inequitable to force Flota to pay reparations . . . ." [7] On remand the Federal Maritime Commission [8] concluded that it was not inequitable to require Flota to pay Consolo reparations, although it did reduce the amount of the award.[9]  Again, both Flota and Consolo appealed to the Court of Appeals for the District of

---

[5] 5 F. M. B. 633, 641.  This order was issued on July 2, 1959. Flota complied by September 1, 1959.

[6] 6 F. M. B. 262.

[7] 112 U. S. App. D. C. 302, 311, 302 F. 2d 887, 896.

[8] The functions and duties of the Federal Maritime Board, so far as relevant to this case, were transferred to the Federal Maritime Commission on August 12, 1961.  Reorganization Plan No. 7 of 1961, 75 Stat. 840, 46 U. S. C. § 1111, note (1964 ed.).

[9] 7 F. M. C. 635.

Columbia Circuit, each intervened in the appeal of the other, and the two appeals were consolidated.[10]  Again Consolo maintained that the award was too small and Flota argued that it should be set aside in part or in whole.  The Court of Appeals reversed and vacated the reparation award, concluding that "[i]n view of the substantial evidence showing that it would be inequitable to assess damages against Flota in favor of Consolo, . . . the Commission abused the discretion granted it under Section 22 of the Shipping Act[11]  [to issue reparation awards] . . . ."  119 U. S. App. D. C. 345, 352, 342 F. 2d 924, 931.  Consolo petitioned this Court for a writ of certiorari to review that decision, which we granted.  381 U. S. 933.

I.

The first question we have is whether the Court of Appeals had jurisdiction of the appeals filed by Consolo and Flota.[12]

---

[10] None of the parties challenged, at this time, the jurisdiction of the Court of Appeals to hear these consolidated appeals.

[11] "Any person may file with the Federal Maritime Board a sworn complaint setting forth any violation of this chapter by a common carrier by water, or other person subject to this chapter, and asking reparation for the injury, if any, caused thereby. . . .  If the complaint is not satisfied the Board shall, except as otherwise provided in this chapter, investigate it in such manner and by such means, and make such order as it deems proper.  The Board, if the complaint is filed within two years after the cause of action accrued, may direct the payment, on or before a day named, of full reparation to the complainant for the injury caused by such violation." 39 Stat. 736, as amended, 46 U. S. C. § 821 (1964 ed.).

[12] Much of what we said in *Interstate Commerce Comm'n* v. *Atlantic Coast Line R. Co., ante,* is relevant to the jurisdictional issue presented by this case.  The Senate Report explaining the Shipping Act expressly observed that the enforcement provisions of the Shipping Act were "modeled very closely after the interstate-commerce act . . . ."  S. Rep. No. 689, 64th Cong., 1st Sess., p. 13. That report also counsels that "the administration and enforcement

As we read the controlling statutory provisions, it seems clear that the Court of Appeals had jurisdiction to consider Consolo's direct appeal from the Commission's reparation order granting only part of the relief requested. Section 2 of the Administrative Orders Review Act (5 U. S. C. § 1032 (1964 ed.)) gives the courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . (c) such final orders of the . . . Federal Maritime Board . . . as are now subject to judicial review pursuant to the provisions of section 830 of Title 46 . . . ." Section 830 of Title 46 (§ 31 of the Shipping Act, 1916, 39 Stat. 738, as amended), in turn, says that, "except as otherwise provided," orders of the Federal Maritime Board are reviewable pursuant to the same procedures as are available "in similar suits in regard to orders of the Interstate Commerce Commission . . . ." Accordingly, if pursuant to provisions in the Interstate Commerce Act a shipper can bring a direct review proceeding to challenge the adequacy of a reparation award issued by the Interstate Commerce Commission, he should be permitted to bring a similar proceeding to challenge the adequacy of a reparation award from the Federal Maritime Commission, subject of course to any special provisions applicable to maritime cases such as the provision in § 2 of the Administrative Orders Review Act that direct review proceedings shall be conducted in the courts of appeals rather than the district courts.

The Court has previously held that an order of the Interstate Commerce Commission denying a shipper's reparation claim is subject to direct review at the instance of the shipper, *United States* v. *Interstate Com-*

provisions of the [interstate commerce] act and the nearly 30 years' experience of the Interstate Commerce Commission [may] be adapted with slight modifications to the purposes of [the Shipping Act]." *Id.*, p. 12.

*merce Comm'n,* 337 U. S. 426, primarily because the adverse order would be wholly unreviewable unless the shipper is permitted to bring an appeal. See *Rochester Tel. Corp.* v. *United States,* 307 U. S. 125. Likewise, in *D. L. Piazza Co.* v. *West Coast Line, Inc.,* 210 F. 2d 947, cert. denied, 348 U. S. 839, the Court of Appeals for the Second Circuit was of the opinion that the principles of *United States* v. *Interstate Commerce Comm'n* were authority for allowing the shipper to seek direct review of an order of the Federal Maritime Board denying a major part, but not all, of the shipper's reparation claim. We think *Piazza* was correct in this respect and we accordingly agree with the court below that it would have jurisdiction to consider Consolo's appeal.

As for Flota's appeal, much of what we have said in *Interstate Commerce Comm'n* v. *Atlantic Coast Line R. Co.,* decided today, is pertinent to our consideration here. In that case, where direct review had not been sought by the shipper, we held that the carrier may have review of a reparation order of the Interstate Commerce Commission only in connection with the shipper's enforcement action under § 16 (2) of the Interstate Commerce Act. Section 30 of the Shipping Act, 39 Stat. 737, as amended, provides for a similar action by the shipper to enforce a reparation award by the Maritime Commission and extends certain procedural advantages to the shipper generally comparable to those provided by § 16 (2) of the Interstate Commerce Act. He has a wide scope of venue; he is not liable for costs unless they accrue on his own appeal; he is allowed reasonable attorney fees if he ultimately prevails; he is the beneficiary of broad service of process and joinder provisions; and the findings and order of the Commission are given prima facie effect in the enforcement action. These advantages were given to the shipper because he was considered generally to be the weaker party in the controversy and he serves an impor-

tant role in the enforcement of the Shipping Act. It was to protect advantages similar to these by preventing the carrier from emasculating the enforcement action that we concluded in *Interstate Commerce Comm'n* v. *Atlantic Coast Line R. Co.*, that the carrier could not seek review of the reparation award except in connection with a shipper's enforcement action. It is readily apparent, we think, that this holding is applicable to Shipping Act cases when the shipper himself has not sought direct review in the Court of Appeals.

Here, however, the jurisdiction of the Court of Appeals has been invoked by the shipper, who seeks to increase the amount of his damages. In these circumstances, we find nothing in the Shipping Act or the Administrative Orders Review Act that would prevent the Court of Appeals from also considering Flota's request, either as a consolidated appeal pursuant to § 2 of the Administrative Orders Review Act or as an intervenor's crossclaim, to have the reparation order set aside or reduced, a result which will not, in our view, substantially impair the procedural advantages intended for a shipper under § 30.

Concerning venue, the shipper will still be able to select the forum. Although the venue provisions governing an appeal are somewhat different from those governing an enforcement suit, the shipper still has relatively wide opportunities to find a convenient forum. Section 3 of the Administrative Orders Review Act (64 Stat. 1130, 5 U. S. C. § 1033 (1964 ed.)) enables the petitioner to bring suit in the judicial circuit where he resides, where his principal office is located or in the District of Columbia. By requiring that the carrier's review proceeding be brought in the court selected by the shipper for his appeal, all the issues in the controversy will be tried in a relatively convenient forum for the shipper.

The shipper will not have the benefit in a direct review of those provisions in § 30 that exempt him from his costs and enable him to collect his attorney's fees if he ultimately prevails.[13]  However, the only additional costs and attorney's fees that the shipper will incur if the carrier is permitted to challenge the reparation award upon a consolidated appeal or cross-claim are those costs and fees attributable to additional issues not otherwise raised by the shipper's appeal.  To the extent the arguments a carrier may advance to decrease or set aside an award would be asserted in any event as defenses to the shipper's claim for increased reparations, no additional costs or fees will be incurred beyond those which the shipper would normally assume for his appeal.  And, if the shipper prevails against the carrier's appeal, any additional costs, although not attorney's fees, as are incurred may be assessed against the carrier as the losing party under 28 U. S. C. § 1912 (1964 ed.).  See also District of Columbia Cir. R. 20 (b).

The minimal disadvantages resulting to the shipper from permitting the carrier to attack the reparation order are more than offset by the desirability of a prompt and efficient determination of the validity of the Commission's order.  Many of the arguments a carrier might make in defense against a shipper's suit to increase the award could also be advanced to show that the award should be reduced or set aside entirely.  And, once the carrier intervenes in the shipper's appeal, all the parties interested in the complete resolution of the validity of

---

[13] Unlike the Interstate Commerce Commission situation, there is no possibility here that an enforcement action can be joined with a direct review proceeding (thereby raising the possibility that the favorable provisions of the enforcement section may become applicable and ensuring that the Commission will be a party), because enforcement suits must be in the district courts and direct reviews can be taken only to the courts of appeals.

the Commission's order are before the court. In this situation it would make little sense to require the carrier to break off his argument short of its logical conclusion and relitigate it anew before a district court in an enforcement action.[14]

With the jurisdiction of the Court of Appeals properly invoked by the shipper, there is, therefore, every reason to permit the carrier not only to litigate the amount of the reparation order but also to insist upon a determination of the validity of the Commission's order, both with respect to the carrier's violation of the Act[15] and with respect to the reparation award itself. If the carrier finally prevails on either of these claims, there would then be no occasion for a separate enforcement suit in the District Court. If the carrier's claims going to the validity of the order are rejected by the Court of Appeals, the determination of a violation by the carrier would be binding in the subsequent enforcement action by the shipper; nor would there be any basis in the course of a subsequent enforcement action conducted in accordance with § 30 to redetermine whether or not the award itself is supported by substantial evidence in the administrative record.[16] Hence, the shipper will need to litigate the

---

[14] These same considerations of judicial economy and fairness to all the parties lie behind the doctrine of ancillary jurisdiction, *Moore* v. *New York Cotton Exchange,* 270 U. S. 593; *Siler* v. *Louisville & Nashville R. Co.,* 213 U. S. 175; 2 Moore, Federal Practice ¶ 8.07 [5] (2d ed. 1965), and the doctrine that an intervenor of right may assert a cross-claim without independent jurisdictional grounds, 4 Moore, Federal Practice ¶ 24.17 (2d ed. 1963).

[15] Of course, in this case the issue of Flota's violation of the Act was resolved in a previous direct appeal by Flota from the Board's cease-and-desist order. There is no question of the jurisdiction of the Court of Appeals to consider that appeal.

[16] See our discussion of the defenses available to a carrier in an enforcement action at *Interstate Commerce Comm'n* v. *Atlantic Coast Line R. Co., ante,* p. 594, n. 6.

issue of validity only once, and this in the Court of Appeals at the instance of the carrier. Although two proceedings may be required to collect his damages, this is only a necessary incident of the shipper's decision to bring his appeal in the first place.

In short, although a shipper may lose some of the procedural advantages given him by § 30 if he is forced to defend the validity of the Commission's order in conjunction with his appeal, these losses generally will not be substantial. To the extent that he is disadvantaged, this is the result of a conscious choice he has made. And from the point of view of the enforcement of the Shipping Act, it is certainly less important that the shipper be assisted in his efforts to obtain a greater award than it is to assist him in his efforts to enforce an existing award. The Court of Appeals was correct in sustaining its own jurisdiction to hear Flota's appeal.

## II.

We turn, then, to the standard of review used by the Court of Appeals when it reversed the Commission's reparation order.

The Court of Appeals rejected the Commission's finding that it would not be inequitable to award Consolo reparations because it felt this finding "ignores . . . the substantial weight of the evidence . . . ." 119 U. S. App. D. C. 345, 347, 342 F. 2d 924, 926. It then concluded that the Commission abused its discretion in ordering reparations because "of the substantial evidence showing that [the reparations] would be inequitable." *Id.*, at 352, 342 F. 2d, at 931. In effect, the standard of review applied and articulated by the Court of Appeals in this case was that if "substantial evidence" or "the substantial evidence" supports a conclusion contrary to that reached by the Commission, then the Commission

must be reversed.[17]  This standard is not consistent with that provided by the Administrative Procedure Act.

Section 10 (e) of the Administrative Procedure Act (60 Stat. 243, 5 U. S. C. § 1009 (e) (1964 ed.)) gives a reviewing court authority to "set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, [or] an abuse of discretion . . . [or] (5) unsupported by substantial evidence . . . ." Cf. *United States* v. *Interstate Commerce Comm'n,* 91 U. S. App. D. C. 178, 183–184, 198 F. 2d 958, 963–964, cert. denied, 344 U. S. 893.  We have defined "substantial evidence"

---

[17] In its first opinion, remanding the issue of reparations to the Commission, the Court of Appeals said, "But in reviewing the evidence [as opposed to reviewing issues of law], we are confined to a much more restricted standard, as the Administrative Procedure Act, § 1 et seq., 5 U. S. C. A. § 1001 et seq., and a long line of Supreme Court decisions, clearly indicate. See, e. g., Universal Camera Corp. v. National Labor Relations Board, 340 U. S. 474, 71 S. Ct. 456, 95 L. Ed. 456 (1951); United States v. Carolina Freight Carriers Corp., 315 U. S. 475, 489, 62 S. Ct. 722, 86 L. Ed. 971 (1942). We have examined the appeals from the reparations award with these considerations in mind." 112 U. S. App. D. C. 302, 309, 302 F. 2d 887, 894. However, in its second opinion, when it reviewed the Commission's finding that it would not be inequitable to award reparations, the Court of Appeals made no reference to the Administrative Procedure Act. The standard of review articulated and apparently applied in that opinion was inconsistent with the Administrative Procedure Act.

We do not read the opinion below as asserting that the Court of Appeals, in a direct review proceeding, may conduct a *de novo* review of the equities of a reparation award. We find nothing in the Shipping Act, the Hobbs Act, or the Administrative Procedure Act that would authorize a *de novo* review in these circumstances, and in the absence of specific statutory authorization, a *de novo* review is generally not to be presumed. 4 Davis, Administrative Law Treatise § 29.08 (1958). See *United States* v. *Carlo Bianchi & Co., Inc.,* 373 U. S. 709, 715; *Morrison-Knudsen Co.* v. *O'Leary,* 288 F. 2d 542, 543–544.

as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co.* v. *Labor Board,* 305 U. S. 197, 229. "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Labor Board* v. *Columbian Enameling & Stamping Co.,* 306 U. S. 292, 300.[18] This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. *Labor Board* v. *Nevada Consolidated Copper Corp.,* 316 U. S. 105, 106; *Keele Hair & Scalp Specialists, Inc.* v. *FTC,* 275 F. 2d 18, 21.

Congress was very deliberate in adopting this standard of review.[19] It frees the reviewing courts of the time-consuming and difficult task of weighing the evidence, it gives proper respect to the expertise of the administrative tribunal and it helps promote the uniform application of the statute.[20] These policies are particularly important when a court is asked to review an agency's

---

[18] Although these two cases were decided before the enactment of the Administrative Procedure Act, they are considered authoritative in defining the words "substantial evidence" as used in the Act. 4 Davis, Administrative Law Treatise § 29.02.

[19] The test of substantial evidence in the record considered as a whole had been applied by some reviewing courts even before Congress acted. See *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, 483, 490.

[20] See *Federal Trade Comm'n* v. *Mary Carter Paint Co.,* 382 U. S. 46; *Labor Board* v. *Southland Mfg. Co.,* 201 F. 2d 244, 246. These same policies are behind the "primary jurisdiction doctrine." *Far East Conference* v. *United States,* 342 U. S. 570, 574–575; *United States Navigation Co., Inc.* v. *Cunard Steamship Co., Ltd.,* 284 U. S. 474. See generally, Stason, "Substantial Evidence" in Administrative Law, 89 U. Pa. L. Rev. 1026 (1941).

fashioning of discretionary relief.[21]  In this area agency determinations frequently rest upon a complex and hard-to-review mix of considerations.  By giving the agency discretionary power to fashion remedies, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency.  These policies would be damaged by the standard of review articulated by the court below.

Ordinarily we would be inclined to remand to the Court of Appeals for further consideration in light of the standard of review established by the Administrative Procedure Act.  *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474; *Labor Board* v. *Walton Mfg. Co.,* 369 U. S. 404.  However, in view of the fact that this controversy already dates back more than eight years, that it has been before the Court of Appeals twice and that the relevant standard is not hard to apply in this instance, we think this controversy had better terminate now.  See *O'Leary* v. *Brown-Pacific-Maxon, Inc.,* 340 U. S. 504.

Section 22 of the Shipping Act, 1916, provides that "The Board . . . *may* direct the payment . . . of full reparation to the complainant for the injury caused by such violation."  46 U. S. C. § 821 (1964 ed.).  (Emphasis added.)  This contemplates that the Commission shall have a certain amount of discretion,[22] but it does not

---

[21] See *Labor Board* v. *Seven-Up Bottling Co. of Miami, Inc.,* 344 U. S. 344; *Securities & Exchange Comm'n* v. *Chenery Corp.,* 332 U. S. 194, 207–209; *Phelps Dodge Corp.* v. *Labor Board,* 313 U. S. 177.  See also *Security Administrator* v. *Quaker Oats Co.,* 318 U. S. 218, where considerable deference was given the Federal Security Administrator in the promulgation of rules pursuant to the Federal Food, Drug, and Cosmetic Act.

[22] See *Grace Line, Inc.* v. *Skips A/S Viking Line,* 7 F. M. C. 432.  See also *Johnston Seed Co.* v. *United States,* 90 F. Supp. 358,

specify what factors are to be considered by the Commission in exercising this discretion. However, we assume that the Commission could validly consider such factors as whether a reparation award would enhance the enforcement of the Act, whether the shipper had suffered compensable injury and whether the award of reparations would be consistent with the previous application of the Act, as well as the factor of culpability of the carrier.[23] Hence, even if the carrier's conduct were such that it would be inequitable to require it to pay a reparation award, this by itself might not be sufficient to establish that the Commission abused its discretion under the Act. However, we need not rest upon this distinction because we feel that it is clear that there is substantial evidence in the record, considered as a whole, to support the Commission's findings that it would not be inequitable in this case to require Flota to pay Consolo reparations.

The Maritime Board determined, and the Court of Appeals agreed, that Flota had been guilty of "unfairly" or "unjustly" discriminating against Consolo and of giving an "undue unreasonable preference" to Panama Ecuador in violation of § 14 Fourth and § 16 First

aff'd 191 F. 2d 228; *Boston Wool Trade Assn.* v. *Director General,* 69 I. C. C. 282, 309, where, to avoid an award of reparations that would be inequitable, the I. C. C. and the courts found certain practices by the carriers to be unreasonable only prospectively. See also *Delaware, Lackawanna & Western Coal Co.* v. *Delaware, Lackawanna & W. R. Co.,* 46 I. C. C. 506, 509.

[23] The Senate Report says that the enforcement provisions in the Shipping Act "confer upon the board power to make orders necessary *for the enforcement of the act . . . .*" S. Rep. No. 689, 64th Cong., 1st Sess., p. 13. (Emphasis added.) Later on, the report says the board shall "make such order as may be proper, including an award of reparation for an injury resulting from the violation." *Ibid.*

of the Shipping Act.[24]  These findings, which were essential to the determination that Flota had violated the Shipping Act, substantially undercut any equities that Flota might claim.  Nevertheless, the Court of Appeals considered it inequitable to make Flota pay reparations because Flota might have believed, in view of the unsettled law, that it was not illegal to exclude Consolo.

Prior to Flota's rejection of Consolo's request for a fair portion of the shipping space, the Federal Maritime Board had decided only two cases relevant to this issue: *Consolo* v. *Grace Line, supra,* and *Banana Distributors, Inc.* v. *Grace Line, supra.*  Both cases held invalid exclusive dealing contracts similar to the one in question here. The Court of Appeals would minimize these two cases as precedents because no order was issued in the first *Grace Line* decision and the second *Grace Line* decision was ultimately reversed and remanded by the Court of Appeals for the Second Circuit.  Nevertheless, at the time Flota entered into the 1957 exclusive contract with Panama Ecuador and at the time it rejected Consolo's request for a fair share of the shipping space, these decisions were authoritative pronouncements by the agency primarily responsible for administering and interpreting the Shipping Act.  And, although the second *Grace Line* decision was ultimately reversed and remanded, upon reconsideration the Board still found the exclusive contract there in question to be illegal and that

---

[24] The Court of Appeals said it is "beyond question" that the Board considered and made sufficient findings, supported by the record, that Flota's exclusive contract with Panama Ecuador was "unjust" and "unreasonable." It also said that the Board was "entitled to conclude that neither the exclusive contract nor the request for a declaratory order rendered Flota's discriminatory refusal of space reasonable or just." 112 U. S. App. D. C. 302, 307–308, 302 F. 2d 887, 892–893.

decision was ultimately affirmed upon appeal to the Second Circuit.[25]

As further evidence of good faith, the Court of Appeals was of the opinion that Flota could reasonably have believed its situation was different from that presented to the Board in the *Grace Line* cases because of physical differences between its vessels and those owned by Grace Line. However, in its first decision affirming the Board's finding of a violation the Court of Appeals had affirmed that the record "adequately supported" the Board's finding that "the differences between Flota's vessels and Grace's vessels are not impressive." 112 U. S. App. D. C. 302, 307, 302 F. 2d 887, 892. We think the Court's first judgment was the correct one. The record is adequate to establish that Flota took a deliberate, and we think substantial, risk when it gambled that the previous contrary precedent could be distinguished. We agree with the Commission that there is nothing inhering in this situation that would make it inequitable to require Flota to pay reparations.

Nor do we feel the record reveals that the reparation award is inequitable because Flota had asked for declaratory relief or because that request was pending before the Board for almost two years. In the first place, Flota did not request declaratory relief until after it had entered into the offending exclusive-dealing contract with Panama Ecuador and until it became clear that Consolo was going to sue anyway. Under these circumstances, the Commission was justifiably skeptical about Flota's motives in bringing suit. Further, although Flota's suit was pending for about two years, the record indicates that much of the delay involved in this case was at the request or approval of Flota. At any rate, it has never

---

[25] It is important to distinguish this situation from one where a litigant affirmatively relies upon an agency declaration, later reversed, that specifically authorized particular behavior. See *Arizona Grocery Co.* v. *Atchison, Topeka & Santa Fe R. Co.*, 284 U. S. 370.

been the law that a litigant is absolved from liability for that time during which his litigation is pending. *Labor Board* v. *Electric Cleaner Co.*, 315 U. S. 685; *Louisville & Nashville R. Co.* v. *Sloss-Sheffield Co.*, 269 U. S. 217. During this time Flota was able to postpone the predictable demise of its discriminatory contract and Consolo continued to suffer injury.

Similarly, we do not believe that Flota acquired any "equities" by being caught between the conflicting demands of Consolo and Panama Ecuador. Not only was this a dilemma of Flota's own making, but in 1958 Flota rejected an opportunity to escape it. At that time Panama Ecuador announced that it was going to cancel the contract unless Flota reduced its rates. Although believing itself under no legal obligation to reduce rates, Flota nevertheless did so in order to perpetuate the illegal exclusive-dealing contract with Panama Ecuador. Finally, there was a provision in Flota's contract with Panama Ecuador that absolved Flota from liability for refusing to comply with the contract if it was illegal. Although absolution of liability depended upon the contract being declared, in fact, illegal, in light of the previous *Grace Line* decisions we think this would have been the more reasonable course of action.

Finally we reject the argument that Flota did not benefit from its policy of excluding Consolo and that Consolo lost "only" expected profits. There is evidence in the record that Flota considered its exclusive-dealing contract with Panama Ecuador more profitable than would have been a multiple contract with several shippers.[26] If Flota did not believe there was an advantage

---

[26] Flota's operating manager in the United States testified that "it is better to deal with one [shipper] than with three." There is also evidence that Flota had been able to settle Panama Ecuador's claims for shipment damages on a basis of only "2.4% which is a very low percentage in comparison with the usual 15% deduction which applies to this type of transportation."

in retaining its exclusive contract with Panama Ecuador it is reasonable to think that it would have taken the opportunity given it in 1958 by Panama Ecuador to cancel that contract and offer space equitably to all shippers. Furthermore, we think the court below wrongly minimized the sting of losing expected profits resulting from being unjustly and illegally denied shipping space. Such a loss is real and it is certainly compensable under the Shipping Act. See *McLean* v. *Denver & Rio Grande R. Co.,* 203 U. S. 38, 48–49; *Roberto Hernandez, Inc.* v. *Arnold Bernstein Schiffahrtsgesellschaft, M. B. H.,* 116 F. 2d 849, cert. denied, *sub nom. Compania Espanola de Navegacion Maritima, S. A.* v. *Roberto Hernandez, Inc.,* 313 U. S. 582.

Without further belaboring this issue, suffice it to say that there is substantial evidence in the record considered as a whole for the Commission to conclude that, "Flota initiated and pursued the unlawful act without good cause and without a satisfactory showing of good faith, and we have been unable, except as noted, to find any equity in its contentions whether viewed separately or together." This being so, it was clear error on the part of the Court of Appeals to reverse the Commission's award of reparations.[27]                   *Reversed.*

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

---

[27] Because of its disposition of this case, the Court of Appeals found it unnecessary to consider Flota's objection that counsel for the Commission, who participated in the writing of the Commission's reparation award upon remand, had violated 5 U. S. C. § 1004 (1964 ed.) because he had previously participated as Public Counsel in the trial before the Hearing Examiner on the issue of whether Flota had violated the Shipping Act (although not in the trial on the reparation issue) and had defended the Commission's finding of violation and award of reparations before the Court of Appeals in the first consolidated appeals. We have examined Flota's contention in this regard and find it without merit.