**NEPTUNE WORLD WIDE MOVING, INC., Plaintiff,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**
and
**United Van Lines, Inc., Burnham Van Service, Inc., Bekins Van Lines Co., Lyon Van Lines, Inc., and Aero Mayflower Transit Company, Inc., Intervening Defendants.**

**67 Civ. 2884.**

United States District Court
S. D. New York.

May 9, 1968.

S. S. Eisen, Arnold Bauman, Morton J. Schlossberg, New York City (Christy, Bauman, Frey & Christy, New York City, on the brief), for plaintiff.

Manny H. Smith, Washington, D. C. (Robert W. Ginnane, Gen. Counsel, on the brief) for Interstate Commerce Commission.

Brian J. Gallagher, Asst. U. S. Atty. (Donald F. Turner, Asst. Atty. Gen.,

John H. D. Wigger, Atty., Dept. of Justice, Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, on the brief), for United States.

G. M. Rebman, St. Louis, Mo., for intervening defendant, United Van Lines, Inc.

James L. Beattey, Indianapolis, Ind., (Edward J. Alfano, New York City, Paul F. Sullivan, Washington, D. C., on the brief), for intervening defendants, Aero Mayflower Transit Co., Inc., and Burnham Van Service, Inc.

Warren N. Grossman, Los Angeles, Cal. (Knapp, Gill, Hibbert & Stevens, Los Angeles, Cal., on the brief), for intervening defendants, Bekins Van Lines Co. and Lyon Van Lines, Inc.

Werner & Alfano, New York City, of counsel for all intervening defendants.

Before FEINBERG, Circuit Judge, and CANNELLA and MANSFIELD, District Judges.

FEINBERG, Circuit Judge:

Neptune World Wide Moving, Inc., brings this action to set aside and annul an order of the Interstate Commerce Commission denying its application for a certificate of public convenience and necessity. Neptune is a motor common carrier with authority to transport "household goods" between various eastern states and other localities throughout the United States, with the exception of thirteen western states.[1] It is also authorized to carry various types of machines[2] over more extensive routes including the western states. In this proceeding, Neptune applied to the Commission for household goods authority in the western states; its application was opposed before the Commission by six carriers, five of whom have also appeared before us.[3] The hearing examiner granted the application, but the Commission reversed on the grounds that Neptune had not shown that the existing services were inadequate or that the extension of authority was necessary to maintain Neptune's competitive position. A petition for reconsideration having been denied, Neptune instituted this action. A three-judge district court was duly convened, 28 U.S.C. §§ 2321–2325, and a hearing was held on April 8, 1968. For reasons set forth below, we sustain the Commission.

At present, Neptune has no authority to transport household goods to or from the western states. However, by means of an "interline" agreement with Lyon Van Lines, Inc., a carrier authorized to serve these states and one of the interveners here, Neptune is able to handle traffic originating or ending in the western states. The interline operations are carried on by leasing Neptune trucks and drivers to Lyon for the portions of each trip that take place beyond Neptune's area of authority. Thus, on east-west traffic, Neptune trucks and drivers pick up freight and carry it over Neptune routes to a location which both Neptune and Lyon are authorized to serve; at the same time, Neptune sends Lyon a notice indicating that goods are being carried from the point of origin to the destination pursuant to the carriers' interline agreement; under that agreement, apparently, the Neptune trucks and drivers are technically leased to Lyon at the location common to both carriers; when they leave that location, they operate under lease to Lyon, and can therefore enter the western states and make deliveries under Lyon's authority from the Commission. A similar

---

1. These states, called the "western states" in this opinion, are Arizona, Colorado, Idaho, Louisiana, Montana, Nevada, New Mexico, Oregon, South Dakota, Texas, Utah, Washington and Wyoming. Neptune already possesses household goods authority to California.

2. Uncrated tabulating machines, X-ray machines and photographic machines and equipment. After some Commission vacillation on the subject, these items are now treated as household goods by the Commission.

3. The sixth carrier was National Van Lines, Inc.

arrangement is used for west-east traffic.

Testimony before the Commission established that in this manner Neptune was providing a useful service to the shipping public and that Neptune customers desired that the service continue. However, Neptune was dissatisfied with these arrangements. It claimed that the agreement with Lyon is constantly in jeopardy because it can be terminated on ninety days notice. Moreover, since Lyon is authorized to provide on a single-line basis the same services that Neptune can offer only by interlining with Lyon, Lyon actually competes with Neptune. As a result, Neptune claimed, it has been harmed in one aspect of its western states business (civilian household goods) and has had another terminated completely (military household goods). In addition, according to Neptune, the existing arrangement was inefficient and wasteful. Because of these problems, Neptune sought single-line authority in its own name to replace its interline agreement. Its basic claim before us is that under prior Commission decisions, single-line authority is available to a carrier providing needed interline services if those services are threatened with termination because the interline arrangements are deteriorating. Neptune argues that the Neptune-Lyon agreement is deteriorating, and that the Commission acted arbitrarily when it denied Neptune's application for single-line authority.

Neptune's main argument requires an analysis of the decision on which it primarily relies, Burnham Van Service, Inc., Household Goods From and To Thirteen States, 98 M.C.C. 58 (1965), aff'd sub nom. United Van Lines, Inc. v. United States, 266 F.Supp. 586 (E.D. Mo.1967) (three-judge court). Burnham had operating authority to carry household goods in the eastern and central portions of the country, and sought to expand into thirteen western states, just as Neptune does. Burnham also had an interline agreement with Lyon. Moreover, as in the instant case, Lyon had obtained its own household goods operating authority to the east, and was establishing its own offices there. But in *Burnham*, the Commission stated, 98 M.C.C. at 63:

> For the past 20 years interlining carriers have terminated their interline agreements with Burnham when they obtain authority and establish their own agents in the East. Applicant contends, and it appears reasonably certain, that it will be unable to conclude other satisfactory interline arrangements which inability will jeopardize its continued participation in this valuable traffic.

The Commission also made the additional crucial finding, id. at 64, that:

> the present interline arrangements are unsatisfactory and threatened with termination * * *.

Thus, Burnham was unable to continue its existing service without interlining, and its interline arrangements were "unsatisfactory and threatened with termination." Since there was a public need for the service, the Commission granted Burnham's application for single-line authority.

Other Commission decisions have similarly focused on deterioration and impending termination of interline arrangements as factors, not challenged by Neptune, to be used in deciding whether to grant single-line authority. See Leonard Bros. Transfer, Inc., Extension—California-Texas, 103 M.C.C. 263, 267 (1966) (denying extension) ("Neither applicant has established on the record that denial of its application will effectively preclude future participation in joint-line movements"); T.E.K. Van Lines, Inc., Common Carrier Application, 86 M.C.C. 139 (1961), aff'd per curiam sub nom. Aero-Mayflower Transit Co. v. United States, 208 F.Supp. 303 (S.D.Cal.1962) (three-judge court) (granting extension); cf. King Van Lines, Inc., Extension—Seven States, 98 M.C.C. 19 (1965), aff'd sub nom. United Van Lines, Inc. v. United States, 266

F.Supp. 586 (E.D.Mo.1967) (three-judge court) (granting extension).

In contrast to the *Burnham* case, and applying the broad standard used in these decisions, the Commission in this case denied Neptune's application because it found that the services Neptune offered would continue to be available under an adequate interline agreement between Neptune and Lyon, 103 M.C.C. 533, 538–39:

> Applicant [Neptune] here, in 1963, voluntarily abrogated its interline arrangements then in effect with other carriers, for the purpose of enhancing its competitive position by interlining exclusively with Lyon. The arrangement seems to have served applicant well, at least until March 1965, when it became disenchanted with the arrangement. Applicant contends that Lyon's refusal to file tenders with it for joint participation in the movement of military household goods traffic is evidence of a deterioration of applicant's interline operations with Lyon. However, there is no showing that Lyon, whose overriding interests precluded its participation with applicant in the movement of interline military traffic from the outset of the interline arrangment, ever intended to share such traffic with applicant.
>
> Further, contrary to applicant's apprehensions, Lyon has expressly stated its purpose to maintain the present interline arrangement, the continuation of which it deems beneficial to its interests. Finally, Lyon denies the assertion that it opposes ' applicant's joinder with other carriers in the filing of tenders for the movement of military traffic between points in the East and West.
>
> Approval of the instant application could be predicated upon a finding that existing service is inadequate or that the authority applicant seeks is necessary to enable it to maintain its competitive position. However, applicant's presentation fails to establish such factors. On the contrary, it appears that a grant would enable applicant to enhance its competitive position by encroachment upon the established authorized services of protestants, a result not warranted on the record established in this case.

██ These are factual findings based upon evidence produced before the Commission. We do not sit as a court of first impression when reviewing such findings; only if they are not supported by substantial evidence on the record as a whole can they be disturbed. The Commission is vested with broad discretion in determining whether public convenience and necessity will be served by a grant of authority, and unless it acts arbitrarily or capriciously in establishing and administering criteria to this end, it will not be reversed upon review. See United States v. Dixie Highway Express, Inc., 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967), reversing 268 F.Supp. 239 (S.D.Miss.) (three-judge court); United Van Lines, Inc. v. United States, 266 F.Supp. 586, 588–589 (E.D.Mo.1967) (three-judge court). While we might have reached other conclusions from the same record, that is not our function. See Consolo v. FMC, 383 U.S. 607, 618–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). We note that if at some future time Neptune's interline arrangements with Lyon do take a turn for the worse, Neptune is not precluded from seeking relief from the Commission based upon new developments.

██ We have considered Neptune's other contentions and conclude that they do not warrant reversal of the Commission. Since the Commission order is supported by substantial evidence on the record, the relief requested is denied.

The report and order of the Commission are sustained. Settle order on appropriate notice.