**Joseph Daniel RAINES, by his next friends and parents Haley Suzanne Raines and Clyde Daniel Raines, Petitioners,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent.**

No. 90–240 V.

United States Court of Federal Claims.

May 22, 1991.

Cathy Morton, Maryville, Tennessee, appeared on behalf of Petitioner.

C. Salvatore D'Alessio, Jr., Department of Justice, Washington, D.C., appeared on behalf of Respondent.

## ORDER

### AFFIRMING (WITH MODIFICATION)

### SPECIAL MASTER'S DECISION

WIESE, Judge.

This case comes before the court on respondent's petition for review of the special master's decision, entered January 29, 1991, determining that the petitioner, Joseph Daniel Raines, suffered a vaccine-related injury compensable under the terms of the National Childhood Vaccine Injury Act of 1986.[1] Specifically, the special master found that: (i) in association with a third diphtheria-pertussis-tetanus (DPT) vaccination administered on May 1, 1985, petitioner sustained a hypotonic-hyporesponsive collapse ("shock collapse"), an "on-table" injury, within three days of

---

1. Pub.L. No. 99–660, tit. III, § 311(a), 100 Stat. 3755 (1986) (current version at 42 U.S.C.A. § 300aa–1 *et seq.* (West Supp.1991)).

receipt of the vaccine and (ii) as a sequela to the hypotonic-hyporesponsive collapse, petitioner suffered complications, in the form of developmental delay and learning impairment, for more than six months after the administration of the DPT vaccine and continues to suffer from such complications.

Respondent's petition for review challenges the correctness of each of these conclusions. The contention is that neither is adequately supported in the record. The issue has been briefed by the parties and argument was heard by the court on May 17, 1991. At the conclusion of the argument the court, after further deliberation on its own, announced a decision in petitioner's favor. The reasons for the decision appear in the transcript of the proceedings. Those reasons, briefly restated here, are as follows:

■ First. Determinations of fact entered by a special master on the basis of evidence contained in the record before him are subject to review here under a substantial evidence standard. Although the statute authorizing review by this court employs the phrasing "arbitrary, capricious, an abuse of discretion" in describing the standard for review of a special master's factual findings, 42 U.S.C.A. § 300aa–12(e)(2)(B) (West Supp. 1991), these words, when applied to administrative determinations drawn from adjudicated facts, are legally synonymous with the term "substantial evidence." *Consumers Union of U.S., Inc. v. FTC*, 801 F.2d 417, 422 (D.C.Cir.1986); *Association of Data Processing Service Organizations, Inc. v. Board of Governors of the Federal Reserve System*, 745 F.2d 677, 683 (D.C.Cir.1984).

■ Second. Substantial evidence denotes such evidence as would be sufficient to convince a reasoning mind of the validity of the proposition being asserted based on an evaluation of the record as a whole and giving due consideration to whatever evidence fairly detracts from the conclusion that is reached. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026–27, 16 L.Ed.2d 131 (1966); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 488, 71 S.Ct. 456, 459, 464–65, 95 L.Ed. 456 (1951).

■ Third. Fairly read, the testimony of petitioner's expert, Dr. Mark R. Geier, supports the conclusions attributed to it: that the petitioner suffered a shock collapse and that petitioner's present learning disability is proximately related to that collapse. We note, in particular, that with respect to one of the principal issues on which the testimony of the parties' experts differed—whether shock collapse may be accompanied by fever—Dr. Geier's opinion finds support in a 1984 report prepared under the auspices of the Public Health Service of the United States Department of Health and Human Services.

· Fourth. The referenced report, titled "Adverse Events Following Immunization" (Report No. 1, 1979–1982) is identified in Dr. Geier's affidavit as part of that body of scientific and medical literature from which his opinions as an expert are derived. Included as part of this report are the results of a study undertaken by the University of California at Los Angeles, concerning adverse DPT reactions. The study reports that, of the 15,752 infant immunizations evaluated during the two year period January 1, 1978 to December 15, 1979, eighteen serious reactions occurred within 48 hours of immunization, nine of which were identified as hypotonic-hyporesponsive episodes (HHE). As to these episodes, the report notes:

> HHE usually occurred within 4 hours of receipt of DTP. In this series, HHE occurred only following 1 of the first 3 doses of DTP, in children 2 to 18 months of age. *Temperature of greater than 38°C [100.4°F] occurred in 7 of the 9 patients.* [Emphasis added.]

Fifth. Although the facts stated in paragraph four do not appear in the special master's decision, we deem them essential to a complete explanation of that decision. Accordingly, since the Vaccine Act gives the court authority to issue its own findings of fact, 42 U.S.C.A. § 300aa–12(e)(2)(B), we hereby amend the special master's decision by adding the following to the end of Finding 7: "Moreover, temperatures greater than 38°C (100.4°F) have been observed to occur in infants suffering a hypotonic-hyporesponsive collapse within 48 hours of DPT immunization."

The decision of the special master is modified in accordance with the above and, as modified, is affirmed. The case is returned to the special master for a determination of the remaining elements of compensation to be awarded.