CRESWELL TRADING COMPANY, INC., South Bay Foundry 1989, D & L Supply Co., Southern Star, Inc., City Pipe & Foundry, Inc., Capitol Foundry of Virginia, Inc., Virginia Precast Corp. and Techsales, Inc., Plaintiffs,

Crescent Foundry Co. P. Ltd., et al., Plaintiff–Intervenors,

v.

UNITED STATES, Defendant,

Allegheny Foundry Co., et al., Defendant–Intervenors.

No. 91–01–00012.

United States Court of International Trade.

Jan. 31, 1992.

Brownstein Zeidman & Schomer, Irwin P. Altschuler, Ronald M. Wisla and Willkie Farr & Gallagher, Christopher Dunn, Walter J. Spak, William J. Clinton, and Vincent Bowen, Washington, D.C., for plaintiffs.

Kaplan Russin & Vecchi, Dennis James, Jr., Washington, D.C., for plaintiff-intervenors.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Velta A. Melnbrencis, and Robert E. Nielsen, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C., for defendant.

Collier, Shannon & Scott, Paul C. Rosenthal, Mary T. Staley, and Robin H. Gilbert, Washington, D.C., for defendant-intervenors.

## MEMORANDUM OPINION AND ORDER

DiCARLO, Chief Judge:

Plaintiffs, importers of iron-metal castings from India, move pursuant to Rule 56.1 of the Rules of this Court for judgment upon the agency record contesting the Department of Commerce's determination to countervail the payments provided by the Indian government to iron-metal castings exporters under India's International Price Reimbursement Scheme (IPRS). *Certain Iron–Metal Castings From India*, 55 Fed.Reg. 50,747 (Dep't Comm.1990) (final admin. review). This Court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (1988). At issue is whether Commerce has discretion to countervail the IPRS payments by disregarding the exception to the countervailability of the preferential provision of input materials. The Court holds that Commerce must examine the IPRS in light of the exception to countervailable subsidies provided in item (d) of the Illustrative List of Export Subsidies incorporated into U.S. law by 19 U.S.C. § 1677(5)(A)(i) (1988).

## BACKGROUND

In 1980, Commerce imposed a countervailing duty order on certain iron-metal castings from India. *Certain Iron–Metal Castings From India*, 45 Fed.Reg. 68,650 (Dep't Comm.1980). Pursuant to 19 U.S.C. § 1675 (1988), Commerce conducted an administrative review of the countervailing duty order for the 1985 calendar year and determined the net subsidy for Indian exporters. 55 Fed.Reg. at 50,752.

During the period under review, the Steel Authority of India, Ltd., an Indian government entity, supplied all of the pig iron used by the castings manufacturers. *Id.* at 50,749. Pig iron could be imported by castings exporters if they obtained an advance import license; however, no import license was issued in 1985 to the exporters subject to the investigation. R. at 551. The Indian castings exporters utilized domestic pig iron and availed themselves of the benefit of the IPRS. *Id.* Consequently, the Indian government was able to maintain the price of domestic pig iron at a high level and protect India's pig iron industry.

In order to enable exporters to compete in international markets, the Indian government reimbursed castings exporters for the difference between the higher domestic price and an "international price" announced monthly by India's Ministry of Commerce for the amount of pig iron used in the manufacture of the exported castings. R. at 549–50. The IPRS payments, however, were not available to producers of domestically-sold iron-metal castings. Commerce found the IPRS payments countervailable and stated:

We consider a government program that results in the provision of an input to exporters at a price lower than to producers of domestically-sold products to confer a subsidy within the meaning of section 771(5) of the Tariff Act. It is *irrelevant* whether the IPRS is consistent with item (d) because we are not concerned with world market prices but with the alternative price of pig iron commercially available in the domestic mar-

ket. This [sic], we determine the IPRS program to be countervailable.

55 Fed.Reg. at 50,749 (emphasis added).

## DISCUSSION

Plaintiffs argue that the IPRS payments are not countervailable because the exception to the countervailability of the preferential provision of input materials is relevant in examining the IPRS, and they contend that the provision of input materials is countervailable only to the extent the terms are more favorable than world market prices. The government contends that the exception is irrelevant because Commerce interpreted 19 U.S.C. § 1677(5) to grant it broad discretion to determine what is a countervailable subsidy.

In reviewing an agency's interpretation of a statute, "[i]f the statutory language is clear, then 'that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Chaparral Steel Co. v. United States*, 8 Fed.Cir. (T) ——, ——, 901 F.2d 1097, 1101 (1990) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984)). When the statute is not clear, and the agency has made an interpretation, the court must examine the agency's interpretation as to whether it is "based on a permissible construction of the statute." *Id.* However, "[t]he traditional deference courts pay to agency interpretation is not to be applied to alter the clearly expressed intent of Congress." *Board of Governors of the Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 368, 106 S.Ct. 681, 686, 88 L.Ed.2d 691 (1986).

Countervailing duty law provides,

The term "subsidy" has the same meaning as the term "bounty or grant" as that term is used in section 1303 of this title, and includes, but is not limited to, the following:

(i) Any export subsidy described in Annex A to the Agreement (relating to illustrative list of export subsidies).

19 U.S.C. § 1677(5)(A). Annex A to the Agreement on Interpretation and Application of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade contains the Illustrative List of Export Subsidies (List), and provides, *inter alia,*:

(d) The delivery by governments or their agencies of imported or domestic products or services for use in the production of exported goods, on terms or conditions more favourable than for delivery of like or directly competitive products or services for use in the production of goods for domestic consumption, *if (in the case of products) such terms or conditions are more favourable than those commercially available on world markets to their exporters.*

H.R.Doc. No. 153, Pt. I, 96th Cong. 1st Sess. 295 (1979) (emphasis added). Item (d) of the List is thereby incorporated into the U.S. statute.

Section 1677(5) clearly gives broad discretion to Commerce in determining what constitutes a countervailable subsidy. The question presented is whether Commerce may deem irrelevant the preferential provision of input materials which Congress determined not countervailable under item (d) of the List.

The government emphasizes the phrase "but is not limited to" in interpreting § 1677(5). The government asserts Commerce has broad authority to create new categories of subsidies and claims the exception in item (d) is irrelevant in determining the countervailability of the IPRS payments. This interpretation, however, could result in the elimination of the exception to the countervailable subsidy provided in item (d). While item (d) authorizes Commerce to countervail the provision of input materials at more favorable terms to exporters than domestic producers, such countervailing duties are not permitted if the terms are not more favorable than those commercially available on world markets. Commerce's determination is contrary to the express intent of Congress, and its interpretation of § 1677(5) is not entitled to deference. Commerce, therefore, must examine the IPRS in light of item (d) and determine whether the Indian government's provision of pig iron was on

terms more favorable than on world markets, as Commerce did in the administrative review of the 1984 calendar year. *See RSI (India) Pvt., Ltd. v. United States,* 12 CIT 331, 687 F.Supp. 605 (1988), *aff'd,* 7 Fed. Cir. (T) 100, 876 F.2d 1571 (1989).

Commerce's determination is also contrary to the legislative history of the Trade Agreements Act of 1979 which provides that Congress granted the agency the discretion to expand the categories of countervailable subsidies "consistent with the underlying principles implicit in these enumerations." H.R.Rep. No. 317, 96th Cong., 1st Sess. 74 (1979); *see also* S.Rep. No. 249 at 85, *reprinted in* 1979 U.S.C.C.A.N. 381, 471. Although the List provides examples which the agency has the authority to expand, new categories of countervailable export subsidies may not be inconsistent with the items on the List.

Furthermore, the Supreme Court stated that "[t]he countervailing duty was intended to offset the unfair competitive advantage that foreign producers would otherwise enjoy from export subsidies paid by their governments." *Zenith Radio Corp. v. United States,* 437 U.S. 443, 455–56, 98 S.Ct. 2441, 2448, 57 L.Ed.2d 337 (1978) (citations omitted). At issue in *Zenith Radio* was the failure of a foreign government to impose an indirect tax on exported products while imposing the tax on domestically-sold products. *Id.* at 445, 98 S.Ct. at 2442–43. A domestic manufacturer brought suit challenging the agency's determination not to countervail. In affirming the agency's long-standing practice not to countervail nonexcessive remission of an indirect tax, the Supreme Court upheld the agency's interpretation that such remission did not result in the type of competitive advantage that Congress intended to counteract. *Id.* at 456, 98 S.Ct. at 2448. Similarly, Congress has determined by adopting item (d) of the List that there is no such unfair competitive advantage bestowed to exporters if a foreign government provides input materials at terms not more favorable than those commercially available on world markets. The elimination of the item (d) exception by countervailing all preferential provision of input materials is

contrary to the purpose of the countervailing duty law.

Finally, the government argues that the IPRS would be countervailable even if item (d) is applied because the calculation of the IPRS payments was not related to the actual consumption of pig iron and the Indian government's "international price" was not the actual world market price. Since this is a determination to be made by Commerce pursuant to 19 U.S.C. § 1675, the case is remanded to Commerce to determine whether the IPRS payments qualify for the exception under item (d).

## CONCLUSION

This action having been submitted for decision and oral argument, and upon due deliberation, it is

ORDERED that the action is remanded to Commerce to determine whether the IPRS payments qualify for the exception under item (d) of the List, and it is further

ORDERED that Commerce shall file the remand results within 45 days from the date of this opinion.