CRESWELL TRADING COMPANY, INC., South Bay Foundry 1989, D & L Supply Co., Southern Star, Inc., City Pipe & Foundry, Inc., Capitol Foundry of Virginia, Inc., Virginia Precast Corp. and Techsales, Inc., Plaintiffs,

Crescent Foundry Co. P. Ltd., et al., Plaintiffs–Intervenors,

v.

**UNITED STATES, Defendant,**

Allegheny Foundry Co., et al., Defendants–Intervenors.

Court No. 91–01–00012.

United States Court of International Trade.

Aug. 28, 1992.

Brownstein Zeidman & Lore, Irwin P. Altschuler, Ronald M. Wisla, and Willkie Farr & Gallagher, Christopher Dunn, Walter J. Spak, Vincent Bowen, Washington, D.C., for plaintiffs.

Whitman & Ransom, Dennis James, Jr., Washington, D.C., for plaintiffs-intervenors.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Velta A. Melnbrencis, Washington, D.C., and (Robert E. Nielsen, Office of Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel), for defendant.

Collier, Shannon, Rill & Scott, Paul C. Rosenthal, Robin H. Gilbert, Washington, D.C., for defendants-intervenors.

## MEMORANDUM OPINION

DiCARLO, Chief Judge:

Plaintiffs, importers of iron-metal castings from India, move for second remand contesting the Department of Commerce's remand determination countervailing the entire subsidy provided by the Indian government to iron-metal castings exporters under India's International Price Reimbursement Scheme (IPRS). *Certain Iron-Metal Castings From India,* (Dep't Comm. March 16, 1992) (remand determination). This court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (1988) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (1988).

The court previously remanded the result of the 1985 countervailing duty administrative review of certain iron-metal castings from India and ordered Commerce to examine the IPRS program in light of item (d) of the Illustrative List of Export Subsidies (List), Annex A to the Agreement on Interpretation and Application of Articles VI, XVI and XXIII of the General Agreement on Tariffs and Trade. *Creswell Trading Co., Inc. v. United States,* 16 CIT ——, 783 F.Supp. 1418 (1992). Under the exception of item (d), provision of goods by governments is not countervailable if the terms of such provision are not more favorable than those "commercially available on world markets to their exporters."

In its draft remand determination, Commerce applied the exception under item (d) and examined whether the IPRS payments exceeded the difference between the claimed world-market prices and the Indian domestic prices of pig iron. Commerce calculated the excess subsidy and recalculated the countervailing duty rates, which were lower than in the original review determination. Commerce, however, reversed its position in its final remand determination and decided to countervail the entire amount of the IPRS payments. Commerce determined that no portion of the IPRS payments can be justified under the exception of item (d) because it found that the record does not substantiate a world-market price for pig iron. The court affirms Commerce's conclusion that plaintiffs failed to carry out their burden of proving world-market prices.

At issue is whether it was reasonable for Commerce to determine plaintiffs failed to meet their burden in establishing the terms and conditions that are commercially available on world markets of pig iron to claim that the IPRS payments are not countervailable under the exception of item (d). Although the parties agreed during the oral argument that item (d) does not require a quotable world-market price, they stipulated for the purpose of this proceeding that the phrase "world-market price" refers to the terms or conditions that are commercially available on world markets for the IPRS payments to be non-countervailable under the exception.

Plaintiffs contend that they do not have the burden of establishing the world-market prices which were prevalent at the time, but the provision only requires them to establish a price that was available to Indian exporters on world markets. They argue that the record is sufficient to establish a world-market price because it can be proved that the IPRS payments did not

provide pig iron to Indian casting exporters at the terms more favorable than those available to Indian exporters on world markets.

Item (d) of the List provides:

(d) The delivery by governments or their agencies of imported or domestic products or services for use in the production of exported goods, on terms or conditions more favourable than for delivery of like or directly competitive products or services for use on [sic] the production of goods for domestic consumption, *if (in the case of products) such terms or conditions are more favourable than those commercially available on world markets to its [sic] exporters.*

H.R.Doc. No. 153, Pt. I, 96th Cong., 1st Sess. 295 (1979) (emphasis added). To qualify for the item (d) exception, it has been Commerce's practice to require a rebate system which assures that the subsidy when granted would not be more favorable than the terms on world markets rather than a system which later might turn out to be non-countervailable. *See e.g., Oil Country Tubular Goods from Taiwan,* 51 Fed.Reg. 19,583 (Dep't Comm.1986) (final neg.) (applying the exception of item (d) when the international price was based on the landed, duty-free price); *Steel Wire Nails from the Republic of Korea,* 47 Fed. Reg. 39,549 (Dep't Comm.1982) (final neg.) (applying the exception of item (d) when the world-market price was assured because the supply from foreign sources were available to export producers).

When the statute is not clear, and the agency has made an interpretation, the court must examine the agency's interpretation as to whether it is "based on a permissible construction of the statute." *Chaparral Steel Co. v. United States,* 8 Fed.Cir. (T) ——, ——, 901 F.2d 1097, 1101 (1990) (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

Here, Commerce, consistent with its practice, construed item (d) to require more evidence of world-market prices than the information plaintiffs provided to show

that the IPRS payments were not countervailable. First, Commerce found that plaintiffs did not establish terms commercially available on world markets because the "international" prices used by the Indian government in determining the amount of the IPRS payments were constructed benchmark prices, which were based either on an outdated government contract from two years prior to the period of investigation or on a mere price quotation for foreign pig iron. Second, Commerce found that the Indian government had no means of assuring that the IPRS program did not provide excessive rebates when the IPRS payments were made.

Plaintiffs argue it should be immaterial in determining countervailability of the IPRS program whether the Indian government was aware of what the world-market price was to ensure that the subsidy would be non-countervailable when the IPRS payments were made. However, the court's "duty is not to weigh the wisdom of, or to resolve any struggle between, competing views of the public interest, but rather to respect legitimate policy choices made by the agency in interpreting and applying the statute." *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 10 Fed. Cir. (T) ——, ——, 966 F.2d 660, 665 (1992). The court finds Commerce's construction of item (d) reasonable.

The court shall affirm Commerce's determination if it is supported by substantial evidence. *See* 19 U.S.C. § 1516a(b)(1)(B) (1988). "Substantial evidence 'is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Matsushita Elec. Indus. Co. v. United States,* 3 Fed.Cir. (T) 44, 51, 750 F.2d 927, 933 (1984) (quoting *Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 619–20, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966)). The record shows that the Engineering Export Promotion Council (EEPC) reference prices used by the Indian government for the calculation of the IPRS was constructed by the Indian government, R.

550, that the reference price used for the first ten months of 1985 was based on a 1983 government contract price, R. 132–33, and that the Indian government was not aware of the world-market price at the time the subsidy was granted. *Id.* Based on this evidence, Commerce concluded that plaintiffs "failed to carry their burden of proof regarding the nature of these prices" because "it is far from clear just what is the EEPC reference price and what is the world-market price, if any, for pig iron." Final Remand at 7. The court finds that Commerce's conclusion is supported by substantial evidence and affirms the remand determination.

Since the court finds Commerce's determination that plaintiffs failed to establish world-market price is supported by substantial evidence, it need not address plaintiffs' challenge on Commerce's determination that the IPRS payments are not directly related to the amount of pig iron contained in the exported castings.

This action is dismissed.