Slip Op. 06-191

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                            :
SINOPEC SICHUAN VINYLON WORKS,              :
                                            :
            Plaintiff,                       :
                                            :
    v.                                      :
                                            :
UNITED STATES,                              :       Before: Judith M. Barzilay, Judge
                                            :       Court No. 03-00791
            Defendant,                       :       **Public Version**
                                            :
    and                                     :
                                            :
CELANESE CHEMICALS, LTD.,                    :
E.I. DUPONT DE NEMOURS & CO,                 :
                                            :
            Defendant-Intervenors.          :
_____:


OPINION

[*Final Results of Determination Pursuant to Court Remand* affirmed in part and remanded to Department of Commerce.]


                                    Dated:  December 28, 2006


*Garvey Schubert Barer* (*Ronald M. Wisla*), *J. Patrick Briscoe*, *William E. Perry*, for Plaintiff Sinopec Sichuan Vinylon Works.

*Peter D. Keisler*, Assistant Attorney General; *David M. Cohen*, Director; (*Patricia M. McCarthy*) Assistant Director; *Stephen C. Tosini*, Commercial Litigation Branch, Civil Division, United States Department of Justice; (*David M. Spooner*), Assistant Secretary for Import Administration, United States Department of Commerce, for Defendant.

*Wilmer, Cutler, Pickering, Hale & Dorr, LLP* (*John D. Greenwald*), *Atman M. Trivedi*, *Ronald I. Meltzer*, *Jack A. Levy*, for Defendant-Intervenors Celanese Chemicals, Ltd., & E.I. DuPont de Nemours & Company.

*Williams, Mullen, Clark & Dobins*, *James R. Cannon, Jr.*, *Dean A. Barclay*, for Amicus Solutia, Inc.

## I. Introduction

This opinion evaluates remand results from the Department of Commerce ("Commerce" or "the Agency") produced in response to this court's order in *Sinopec Sichuan Vinylon Works v. United States*, 30 CIT __, Slip Op. 06-78 (May 25, 2006) (not reported in F. Supp.) ("*Sinopec II*").[1] *See generally Final Results of Determination Pursuant to Court Remand* ("*Final Results*"). In *Sinopec II*, the court remanded this case to Commerce on two issues. First, this court held that Commerce must reanalyze its treatment of the acetic acid inputs that Plaintiff Sinopec Sichuan Vinylon Works ("SVW") purchases from its joint-venture ("JV"). Specifically, it declared that

> Commerce's narrow focus on the fact that SVW and the JV are legally distinct entities deviates from its prior methodology and fails to adequately address a central tenet of antidumping margin calculation: Affiliated parties often have the potential to manipulate the prices and costs of their transactions with each other – a potential not coextensive with the *de jure* unity or independence of the parties as Commerce suggests. . . . Aside from examining the legal connections between SVW and its JV, Commerce must examine the possibility of SVW exerting *de facto* control over the JV.

*Sinopec II*, Slip Op. at 9–10. "If [SVW] exercises such control, . . . Commerce should treat the JV's acetic acid as SVW's self-produced input. However, if the firms do not operate in such an integrated manner, Commerce may not treat the acetic acid as self-produced by SVW." *Id.* at 8 (footnote omitted). Second, the court instructed the Agency to revise its methods for calculating SVW's overhead costs by reconciling "its willingness to incorporate a by-product credit for SVW's acetic acid recovery into its figures" with an otherwise repeated unwillingness "to adjust

---

[1]Familiarity with the procedural history and reasoning of *Sinopec I*, 29 CIT __, 366 F. Supp. 2d 1339 (2005), and *Sinopec II* is presumed.

its calculations to compensate for SVW and [its surrogate corporation's] differing levels of vertical integration." *Id.* at 14. The court also held that Commerce should avoid double-counting any factors in its calculations if reasonably possible. *See id.* at 16–17.

## II. Jurisdiction & Standard of Review

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(c). The court "must sustain 'any determination, finding or conclusion found' by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with the law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Matsushita Elec. Indus. Co. v. United States*, 750 F.2d 927, 933 (Fed. Cir. 1984) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)) (quotations omitted). "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 619–20 (1966)) (quotations omitted). The court therefore "affirms Commerce's factual determinations so long as they are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusions." *Olympia Indus., Inc. v. United States*, 22 CIT 387, 389, 7 F. Supp. 2d 997, 1000 (1998) (citing *Atl. Sugar, Ltd. v. United States*, 744 F.2d 1556, 1563 (Fed. Cir. 1984)). It may not "substitut[e] its judgment for that of the agency." *Hangzhou Spring Washer Co. v. United States*, 29 CIT ___, ___, 387 F. Supp. 2d 1236, 1251 (2005) (citing *Koyo Seiko Co. v. United States*, 36 F.3d 1565, 1570 (Fed. Cir. 1994)).

### III. Discussion

**A. Sinopec Sichuan Vinylon Works' Acetic Acid Inputs**

**1. Commerce's Position**

In *Sinopec II*, the court held that Commerce must examine whether SVW exercises *de jure* or *de facto* control over its JV to determine whether to treat SVW's acetic acid inputs as self-produced.[2] *See Sinopec II*, Slip Op. at 8–10. If the Agency found the presence of either method of control, it should treat the acetic acid that SVW purchases from its JV as self-produced; conversely, if SVW had neither *de jure* nor *de facto* control over the JV, Commerce could not treat the acetic acid as self-produced. *See id.* at 8.

On remand, Commerce again determined that SVW and its JV "are not vertically integrated and, therefore, SVW's acetic acid purchases do not qualify as self-produced inputs." *Final Results* at 6. In its reevaluation of SVW's *de jure* control over its JV, Commerce continues to find that they are "legally separate . . . entities." *Id.* at 9. Since SVW owns [[    ]] of the JV, while [[    ]] possesses a majority stake in the firm, *see id.* at 12, SVW's level of ownership "merely establishes that the two entities are affiliated, not that SVW exerts legal control over its JV." *Id.* at 9. Likewise, Commerce found that SVW does not exert *de facto* control over the JV.[3] According to the Agency's findings, SVW's president, vice presidents, and managers have all worked for SVW for over a decade, and during that period, they never worked for any company

---

[2]The court notes that, contrary to Commerce's contention in the *Final Results*, the Agency must examine *both* the legal *and* operational relationships between SVW and its JV to determine whether SVW possesses legal *or* operational control over its JV. *See Final Results* at 9.

[3]In performing this analysis, Commerce employed the factors set out in subsection (f)(2) of the collapsing regulation 19 C.F.R. § 351.401(f). It refrained from using the "substantial retooling analysis" from subsection (f)(1), which this court has ruled inapplicable to evaluating vertical integration between firms. *See Sinopec II*, Slip Op. at 9.

affiliated with SVW, including the JV. *See id.* at 13. Similarly, "there is no evidence on the

record . . . indicating that managerial employees or board members" of the JV sit on SVW's

board of directors. *Id.* Aside from attesting to its minority ownership interest in the JV,

> SVW proffered no additional evidence indicating that it makes any investment, employment, production, or distribution decisions with respect to its supplier's acetic acid operations or overall corporate operation. The investigation record contains no evidence demonstrating that SVW incurs the operational, maintenance and depreciation-related expenses of its supplier's [the JV's] acetic acid plant or that SVW shares costs and expenses related to its JV's acetic acid production. There are no facts on the record indicating that SVW monitors or directs the raw materials consumed by its supplier, that it establishes the production methods employed by its supplier, or that SVW requires that its supplier meet particular specifications unique to SVW.

*Id.* at 14 (internal citation omitted).

Because the JV operates independently of SVW, the Agency decided not to treat the

acetic acid SVW purchases from its JV as self-produced. *See id.* at 17. Consequently,

Commerce "determined that a surrogate value for acetic acid, rather than the FOPs [factors of

production] for acetic acid, should be employed in calculating the NV [normal value] of the

acetic acid inputs." *Id.* at 6.

### 2. Plaintiff's Position[4]

SVW contests the Commerce Department's finding that the firm does not exercise *de*

*facto* control over the JV. It claims that the "exclusive focus" of Commerce's initial

investigation "on the companies' legal corporate status, rather than the exercise of operational

control," ensured that "the administrative record lacks relevant information on this issue."

Comments SVW Second Remand Results 3 ("Pl. Cmts."). In essence, by relying on the absence

---

[4]Defendant-Intervenors Celanese Chemicals, Ltd., and E.I. Dupont de Nemours & Co. concur with the Agency's findings. *See* Comments Def.-Intervenors Final Results Redetermination Pursuant Ct. Remand 12 ("Def.-Ints. Cmts.").

of information reflecting SVW's control over the JV, Commerce has "blamed the victim,"

instead of acknowledging that its initial preoccupation with the *de jure* relationship between the

firms distorted the information that it gathered when compiling the record. Pl. Cmts. 3. SVW

avers that the Agency should reopen the administrative record to solicit the relevant data. *See* Pl.

Cmts. 2.

### 3. Analysis

The court finds that Plaintiff's claim that Commerce should reopen the record to lack

merit. Essentially, Plaintiff contends that Commerce's determination lacks the substantial

evidentiary support that the law demands. However, upon review of the administrative record,

the court finds that Commerce sought information from SVW that addresses the *de facto* as well

as *de jure* relationships between SVW and its JV. Consequently, SVW had ample opportunity to

submit information to the Agency that would demonstrate its *de facto* control over its JV and so

would bear the burden of ameliorating any claimed deficiency in the record. *See, e.g.*, *Response*

*of Sinopec Sichuan Vinylon Works (SVW) to Second Supplemental Questionnaire*, at 2 (Dep't

Commerce Jan. 13, 2003); *Response of Sinopec Sichuan Vinylon Works to Section A of the*

*Department's Questionnaire*, at 2–3, 6–8 (Dep't Commerce Nov. 22, 2002); *see also NSK, Ltd.*

*v. United States*, 20 CIT 361, 369, 919 F. Supp. 442, 449 (1996) ("[R]espondents have the

burden of creating an adequate record to assist Commerce's determinations.") (quotations &

citation omitted). Because SVW has not demonstrated that the record lacks essential evidence,

let alone due to factors beyond its control, the court will not order Commerce to reopen the

record to glean more information about the *de facto* relationship between Plaintiff and its JV.

Furthermore, in its examination of whether SVW exerts *de facto* or *de jure* control over the JV,

the Agency has complied with the requirements of 19 U.S.C. § 1677(4)(B)[5] and 19 C.F.R.

§ 351.102(b).[6]  *See also* 19 U.S.C. § 1677(33); 19 C.F.R. § 351.401(f)(2).  Therefore,

Commerce's evaluation of Plaintiff's acetic acid inputs is supported by substantial evidence and

in accordance with law, and therefore is affirmed.

**B. Sinopec Sichuan Vinylon Works' Overhead Costs**

    **1. Commerce's Position**

The court's remand instructions to Commerce in *Sinopec II* directed the Agency to "either

adhere to its customary practice of using the surrogate producer's data without adjustment, or [to]

reopen the record to obtain data reasonably necessary to adjust [the surrogate firm's] overhead so

that it accounts for differences between its manufacturing processes and those of SVW." *Sinopec*

*II*, Slip Op. at 17.  In addition, the court held that Commerce must "adopt a calculation method

that avoids double-counting insofar as it is reasonably avoidable." *Id.*  In its reanalysis of SVW's

overhead costs, Commerce claims to have opted for the former choice and used the surrogate's

data without adjustment because that method "yields the most accurate calculation of NV."

*Final Results* at 19; *see id.* 17–20.  Specifically,

---

[5]"[A] party shall be considered to directly or indirectly control another party if the party is legally or operationally in a position to exercise restraint or direction over the other party."  19 U.S.C. § 1677(4)(B).

[6]In relevant part, the regulation states that:
In determining whether control over another person exists . . . , the Secretary will consider the following factors, among others: corporate or family groupings; franchise or joint venture agreements; debt financing; and close supplier relationships. The Secretary will not find that control exists on the basis of these factors unless the relationship has the potential to impact decisions concerning the production, pricing, or cost of the subject merchandise or foreign like product.
19 C.F.R. § 351.102(b).

the Department reanalyzed its treatment of SVW's acetic acid inputs and has determined that the surrogate value of the purchased acetic acid contains the overhead, SG&A and profit related to the production and sale of acetic acid. Therefore, [it] found that applying the financial ratios of [the surrogate], which produces acetic acid, to the acetic acid surrogate value may have added additional costs.

*Id.* at 21–22. As a result, Commerce did not apply any financial ratios to the purchase value of acetic acid. *See id.* at 22. "Thus, while the Department is adhering to its customary practice of using the surrogate producer's data without adjustment, it has modified how these data are applied to the FOPs of PVA [polyvinyl acetate]." *Id.*

### 2. Defendant-Intervenors' Position[7]

Defendant-Intervenors aver that Commerce unlawfully adjusted the application of surrogate ratios to SVW's costs. When the Agency failed to apply ratios for factory overhead, SG&A expenses, and profit to the surrogate values for SVW's acetic acid purchases to "avoid[] 'possible double counting,'" Defendant-Intervenors assert that the Agency in reality 1) "[a]ssumed an element of double counting that . . . does not exist;" 2) "[a]rbitrarily skewed its antidumping margin calculation by failing to apply any amount of factory overhead, SG&A and profit to the most significant component of SVW's direct costs;" and 3) "[d]eparted from its long-established practice of applying surrogate financial ratios for factory overhead, SG&A and profits to respondents' appropriate cost base of . . . materials, energy and labor ("MLE"), . . . manufacture, and . . . production." Def.-Ints. Cmts. 2. According to Defendant-Intervenors,

---

[7]Apart from a single issue, Plaintiff's objections to Commerce's overhead cost calculations mirror those of Defendant-Intervenors. The unique issue that Plaintiff challenges – that in calculating a by-product offset with respect to Plaintiff's reduced acetic acid production, the Agency deducted the value of the by-product from manufacturing costs after, rather than before, application of the financial ratios – has already been affirmed by the court. *Compare* Pl. Cmts. 4–9, *with Sinopec II*, Slip Op. at 11 n.11; *Sinopec I*, 366 F. Supp. 2d at 1351.

Commerce's excision of supposed double counting embedded in the surrogate's financial ratios when calculating SVW's acetic acid purchasing overheads is at best "speculative." Def.-Ints. Cmts. 3; *see* Def.-Ints. Cmts. 5–6. Similarly, "[w]hether a company that purchases an input [SVW] carries higher or lower amounts for MLE or overheads, or a higher or lower ratio of overheads to MLE, than a company that self-produces the same input [the surrogate] is unknowable." Def.-Ints. Cmts. 3. Furthermore, even if double counting did occur, Defendant-Intervernors calculate that Commerce grossly over-estimated the relevant figures. *See* Def.-Ints. Cmts. 4. Finally, they note that the Agency provided no explanation for these double counting revisions aside from acknowledging "'the Court's concern.'" Def.-Ints. Cmts. 4 (quoting *Final Results* at 19).

### 3. Analysis

A reading of the *Final Results* reveals that Commerce misconstrued the court's ruling in *Sinopec II* and interpreted the court's concerns about double counting the overhead, SG&A, and profit stemming from the surrogate's acetic acid production as a finding that the Agency had in fact done so. However, as Defendant-Intervenors point out, the court merely noted that Commerce "*seems* to have double counted" the data. *Compare Final Results* at 19 n.9, 22, *with Sinopec II*, Slip Op. at 16–17 (emphasis added). The court did not conclude that double counting indeed did occur and, if so, to what degree.[8]

In addition, Commerce's reasoning for its calculation revisions does not constitute the "reasoned decisionmaking, . . . including . . . a reasoned explanation supported by a stated connection between the facts found and the choice made" that the law requires. *China Steel*

---

[8]If Commerce felt unclear about the meaning of the remand order concerning double counting, it should have sought clarification from the court.

*Corp. v. United States*, 27 CIT 715, 734, 264 F. Supp. 2d 1339, 1359 (2003) (second ellipses in original) (quotations & citation omitted); *see, e.g.*, *Final Results* at 19 n.9 ("[T]he Department respectfully notes that any minor differences between SVW and [the JV] merely act to equalize their respective integration levels . . . . Nevertheless, the Department has followed the Court's direction and revised its application of the surrogate overhead ratio to eliminate any possible double-counting."), 21–22, 33; *see Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167–68 (1962); *cf. Rhodia, Inc. v. United States*, 26 CIT 1107, 1111, 240 F. Supp. 2d 1247, 1251 (2002). The court thus remands the calculation of SVW's overhead costs for adjustments that comport with Commerce's estimation of double counting, if any, that may have occurred. Additionally, Commerce is to provide the court with a well-reasoned explanation for its final decision.

## IV. Conclusion

For the reasons stated above, the Department of Commerce's evaluation of Plaintiff's acetic acid inputs is affirmed, and the court remands the calculation of Plaintiff's overhead costs for revision not inconsistent with this opinion. Commerce shall have until February 27, 2007 to submit to this court its revised remand results, whereupon Plaintiff and Defendant-Intervenors will have until March 13, 2007 to submit their responses. Defendant will thereupon have until April 19, 2007 to submit its response to the parties' comments.

December 28, 2006        /s/ Judith M. Barzilay

Dated:_____       _____

New York, NY        Judge