Slip Op. 10-100

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| GLOBE METALLURGICAL INC.,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant. | Before: Leo M. Gordon, Judge<br><br>Court No. 08-00290 |

**OPINION**

[Remand results sustained.]

Dated: September 1, 2010

DLA Piper LLP (US) (William D. Kramer, Martin Schaefermeier, Arlette Grabczynska) for Plaintiff Globe Metallurgical Inc.

Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (L. Misha Preheim); and Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Aaron P. Kleiner), of counsel, for Defendant United States.

Gordon, Judge: This action involves an administrative review conducted by the U.S. Department of Commerce ("Commerce") of the antidumping duty order covering silicon metal from China. Silicon Metal from the People's Republic of China, 73 Fed. Reg. 46,587 (Dep't of Commerce Aug. 11, 2008) (final results admin. review) ("Final Results"); see also Issues and Decision Memorandum for the Final Results of the 2006-2007 Antidumping Duty Administrative Review of Silicon Metal from the People's Republic of China, A-570-806 (Aug. 4, 2008), available at http://ia.ita.doc.gov/frn/summary/PRC/E8-18477-1.pdf (last visited Sept. 1, 2010)

("Decision Memorandum").  Before the court are the Final Results of Redetermination (Apr. 8, 2010) ("Remand Results") filed by Commerce pursuant to Globe Metallurgical Inc. v. United States, No. 08-00290 (USCIT Dec. 18, 2009) (order remanding to Commerce) ("Remand Order").  The court has jurisdiction pursuant to Section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006),[1] and 28 U.S.C. § 1581(c) (2006).

**Background**

During the administrative review Plaintiff, Globe Metallurgical Inc. ("Globe"), alleged that Ferro-Alliages et Mineraux Inc. ("Ferro-Alliages") may have circumvented the antidumping order by shipping subject merchandise to the United States by way of Canada and then labeling that merchandise as Canadian-origin.  Commerce inquired of Ferro-Alliages about entries of subject merchandise and Ferro-Alliages certified that it had no such entries.  Commerce reviewed data from U.S. Customs and Border Protection ("CBP") and found no evidence of entries of subject merchandise by Ferro-Alliages during the period of review.  In the preliminary results Commerce rescinded the review with respect to Ferro-Alliages.  Globe challenged that decision in its case brief, but Commerce maintained its position.

In this action Globe challenges Commerce's decision to rescind the administrative review for Ferro-Alliages.  More specifically, Globe challenges Commerce's determination not to further investigate (within the administrative review) Globe's allegation that Ferro-Alliages had transshipped Chinese-origin silicon metal to

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2006 edition.

the United States during the period of review.  In its opening brief Globe asserted that

Commerce was statutorily obligated to investigate Globe's transshipment claim in the

administrative review, and that Commerce's refusal was inconsistent with actions

Commerce had taken in a prior administrative proceeding, Certain Tissue Paper

Products from the People's Republic of China, 72 Fed. Reg. 58,642 (Dep't. of

Commerce Oct. 16, 2007) (final results admin. review) ("Tissue Paper").  Globe further

asserted that Commerce had not articulated a reasonable basis for its determination

that a scope or circumvention proceeding, rather than an administrative review, would

be the proper venue for Commerce to consider Globe's allegation.

In December 2009 the court remanded the administrative review to Commerce.

The court, however, rejected Globe's argument that the statutory provision governing

administrative reviews, 19 U.S.C. § 1675(a), obligates Commerce to investigate

transshipment allegations in administrative reviews:

> Globe argues that the antidumping statute requires in every instance that Commerce, within an administrative review, investigate fully any allegations of transshipments of subject merchandise.  Pl.'s Br. in Supp. of Mot. for J. upon Agency Rec. at 10-12.  For Globe this is a Chevron step-one issue, and the statutory language reveals a clear Congressional intent.  The court does not agree.  The section of the statute governing Commerce's administrative reviews, 19 U.S.C. § 1675(a), does not obligate Commerce to investigate transshipment allegations.  Section 1675(a) provides that Commerce, if requested, must "review and determine the amount of any antidumping duty" for entries of subject merchandise.  19 U.S.C. § 1675(a).  It does not provide any guidance on when and how Commerce should investigate transshipment allegations.  An argument could be made that transshipment allegations more properly fall within the ambit of a scope/circumvention determination (which addresses whether particular merchandise is subject to an antidumping duty order), see 19 C.F.R. § 351.225(a) (2008), a point emphasized by Commerce in the Final Results.  73 Fed. Reg. at 46,587 ("[A]s this is an administrative review, not a scope or circumvention

inquiry, we find that this is not the proper proceeding to pursue [Globe's] claims.").

> If taken to its logical conclusion, Globe's statutory argument would seem to negate the need for scope/anticircumvention proceedings altogether, and mandate the handling of those issues within an administrative review. This is too extraordinary a leap for the court to indulge. It suffices to say that on the question of investigating transshipment allegations, the statute does not dictate which proceeding must be used. Commerce, therefore, has a measure of <u>Chevron</u> step-two, gap-filling discretion.

Remand Order at 8-9.

The court did, however, conclude that Commerce had failed to articulate a reasonable basis not to investigate Globe's allegation in the administrative review given that Commerce had more thoroughly investigated transshipment allegations in <u>Tissue Paper</u>. <u>Id.</u> at 10-12. Additionally, the court determined that Commerce erred in its conclusion that Globe had provided "no evidence" to support its transshipment allegation. <u>Id.</u> at 12. Thus, the court instructed Commerce to reconsider its determination of Globe's transshipment claim. <u>Id.</u> at 13.

In April 2010 Commerce issued its Remand Results. Commerce explained:

[U]pon reexamination of the record, we have determined the Department's statement in the <u>Final Results</u> that no evidence existed on the record of the review with respect to circumvention/transshipment to be in error. We acknowledge that petitioner had placed some evidence on the record to support its allegations with respect to Ferro-Alliages. However, after further examination of our practice and statutory authority and framework, we find that the issue of whether, and how, to address allegations that subject merchandise has been exported to the United States through a third-country is primarily a procedural question. In that regard, the Department has concluded that the proper venue and procedural framework to conduct inquiries regarding transshipment involving third-country processing are those providing for scope and circumvention inquiries, as further discussed below.

. . .

As explained in the preceding <u>Background</u>, the Department's decision not to pursue petitioner's transshipment allegation within the context of the administrative review was based on Ferro-Alliages' certification that it made no shipments of subject merchandise during the POR and confirmation of this certification from [Custom's and Border Protection "CPB"] data, and the Department's view that the proper venue for review of petitioner's allegation involving third country processing is a scope or circumvention inquiry. Here, the Department maintains that a scope or circumvention inquiry is the proper venue for such allegations.

. . .

. . . the Department's regulations regarding scope and circumvention inquiries cover instances where there is a question as to the country-of-origin of the merchandise based upon processing activities that take place in a third country. The introduction to 19 CFR 351.225 indicates that "a domestic interested party may allege that changes to an imported product or the place where the imported product is assembled constitutes circumvention under section 781 of the Act." <u>See</u> 19 CFR 351.225(a). In addition, 19 CFR 351.225(h) allows for "imported merchandise completed or assembled in a foreign country other than the country to which the order applies" to be included in the scope of an antidumping duty order. <u>See</u> 19 CFR 351.225(h). By linking the Department's authority to investigate country-of-origin claims to whether a third-country party conducted some type of work on the merchandise before it is exported to the United States, the Department's regulations set forth a manageable framework for the Department to investigate country-of-origin claims involving such activity.

The Department's approach is consistent with the Court's statement in the <u>Remand Order</u> that the statutory deadlines governing administrative reviews may necessitate reliance upon a more flexible mechanism to investigate country-of-origin claims. As the Court noted, "[a]scertaining whether entries may fall within the scope of an antidumping duty order is a task that may not be completed within the various deadlines required for an administrative review." <u>See</u> <u>Remand Order</u> at 10. The Department concurs with the Court that the statutory timeline for

administrative reviews presents a barrier to investigating country-of-origin claims in administrative reviews.

Investigating country-of-origin issues involving third-country processing in the context of the administrative review process would postpone the normal work associated with an administrative review to such an extent that it would become even more challenging for the Department to satisfy the statutory time limits for administrative reviews — for example, the Department has a maximum of 365 days to complete all the work necessary to issue our preliminary results. In contrast with the statutory scheme governing administrative reviews, the timeline for scope and circumvention inquiries may be extended and, accordingly, provides the Department with the necessary flexibility to thoroughly investigate country-of-origin issues involving third country processing and determine the appropriate course of action with regard to a party's activities. See 19 USC 1677j(f).

The administrative record demonstrates that petitioner recognizes the Department's position that such country-of-origin claims would be better pursued in scope or circumvention inquiries. In fact, after meeting with Department officials, petitioner withdrew its request for review of Jiangxi Gangyuan Silicon Industry Company, Ltd., MPM Silicones, LLC, and GE Silicones (Canada) (also known as Momentive Performance Materials Canada ULC), citing Department statements that "there are Department procedures other than administrative reviews that address alleged circumvention activities. . . .

Moreover, the Department notes that, after the conclusion of the Silicon Metal Review, petitioner filed a scope request regarding Ferro-Alliages' exports to the United States of products which may be subject to the antidumping duty order. Pursuant to these allegations and supporting evidence not present on the record of the instant administrative review, the Department initiated a formal scope inquiry in the matter. See, e.g., Notice of Scope Rulings, 74 FR 49859 (September 29, 2009) (listing the Silicon Metal Scope among pending inquiries). To date, the Department has issued questionnaires to Ferro-Alliages and received and analyzed responses to these questionnaires. The Department has also received and analyzed numerous comments from petitioner over the course of this scope inquiry. Though the Court rejected the scope inquiry as a basis to find the instant case moot, the Department respectfully notes that the scope review remains relevant to the instant case, as it demonstrates that

the Department's actions are consistent with its statements that scope or circumvention inquiries are the proper venue for country-of-origin claims involving third country processing. <u>See</u> Remand Order at 8 (discussing the effect of the Department's scope review).

. . .

With regard to <u>Tissue Paper</u>, where the Department pursued an allegation of transshipment in the context of an administrative review, the Department's experience in <u>Tissue Paper</u> demonstrates that administrative reviews do not provide a viable venue for such country-of-origin inquiries. The factual context surrounding the transshipment claim in <u>Tissue Paper</u>, and the Department's efforts to investigate that claim, are relevant here. The transshipment claim raised in <u>Tissue Paper</u> was brought by the <u>Tissue Paper</u> petitioner, Seaman Paper Company of Massachusetts, Inc. ("Seaman"). Seaman claimed that a respondent, the Sansico Group ("Sansico"), had transshipped Chinese-origin tissue paper through Indonesia to circumvent the antidumping duty order on tissue paper from the PRC. However, the Department preliminarily rescinded the administrative review with respect to Sansico, pursuant to Sansico's claim that it made no shipments of subject merchandise during the <u>Tissue Paper</u> review period. The Department noted that Sansico's claim was supported by CBP data, as in the instant case. <u>See</u> <u>Certain Tissue Paper from the People's Republic of China: Preliminary Results and Preliminary Rescission, In Part, of Antidumping Duty Administrative Review</u>, 72 FR 17477, 17480 (Apr. 9, 2007).

Seaman's transshipment allegation centered on sales to Sansico by one of Sansico's suppliers, "supplier A," who was not affiliated with Sansico. According to Seaman, "supplier A" imported Chinese-origin tissue paper into Indonesia for sale to Sansico, which was then sold to the United States. "Supplier A" refused to allow the Department to verify its books and records in the course of the Department's verification of Sansico. <u>See</u> <u>Tissue Paper</u> Issues and Decision Memorandum at Comment 3. The Department's inability to pursue such allegations regarding parties who are not interested parties under the statute highlights the impracticality and ineffectiveness of attempting to investigate such claims through the administrative review process.

As a result, the Department determines that <u>Tissue Paper</u> does not set forth a manageable approach to investigating country-of-origin issues,

based upon all the reasons listed above. Our experience in <u>Tissue Paper</u> further reinforced that the time constraints of an administrative review hinder the Department's ability to effectively investigate transshipment claims. The <u>Tissue Paper</u> petitioner placed a large amount of evidence on the record of the administrative review in support of its transshipment allegation, including detailed technical information regarding product characteristics and manufacturing processes. <u>See</u> <u>Tissue Paper</u> Issues and Decision Memorandum at Comment 3. The time and resources necessary to evaluate and verify such information, in addition to parties' responses and comments upon the regular questionnaires that the Department issues in the court [sic] of an administrative review, creates an overwhelming burden in administrative reviews, where the Department's statutory time constraints are always of concern. There were also no suspended entries of subject merchandise upon which to assess antidumping duties on in <u>Tissue Paper</u>, and petitioner's claims should have been pursued in a scope or circumvention inquiry, if third country processing was involved, or may have been beyond the Department's authority if the allegations involved mislabeled country-of-origin declarations to CBP. Furthermore, the Department's regulations under 19 CFR 351.225, cited above, clearly indicate that the optimal venue for addressing country of origin issues involving third country processing is a scope or circumvention inquiry. In sum, the Department recognizes here that <u>Tissue Paper</u> does not establish a viable practice for the Department to examine such claims.

As noted earlier, the issue here is primarily a procedural matter. Nonetheless, the Department acknowledges that evidence was placed on the record on the review. Petitioner placed on the record information regarding Ferro-Alliages' lines of business and import and export activity, as well as general statistics regarding importation of Chinese silicon metal into Canada. <u>See</u> No Shipment Comments at 1-2 and Exhibits 2-3, Withdrawal of Requests for Review at 1-2 and Exhibits 2-3, Globe Case Brief at 2-5, and Closed Hearing Transcript. Our statement, therefore, in the <u>Final Results</u> that no evidence existed to support petitioner's allegations was in error. However, for all the reasons outlined above, our decision not to pursue petitioner's claims of transshipment within the context of an administrative review was correct and in accordance with our statutory and regulatory framework.

Also, as noted earlier, we emphasize that the Department's statutory authority to investigate circumvention of an order is limited to

circumstances where some further processing is performed on the product in the third country before exportation to the United States, such that for purposes of AD/CVD law, the country of origin of the final product is unclear. <u>See</u> 19 USC 1677j. As explained above, the Department's regulations allow the Department to assess antidumping duties on "imported merchandise completed or assembled in a foreign country other than the country to which the order applies." <u>See</u> 19 CFR 351.225(h). Allegations that concern transshipment, without any further processing of subject merchandise in a third country are better addressed under CBP's authority to impose monetary penalties pursuant to fraud, gross negligence, and negligence. <u>See</u> 19 USC 1592. Without reaching the question of whether petitioner's allegations present a viable matter for CBP's inquiry, the Department notes that its authority to investigate such country-of-origin claims is not as expansive as the authority granted to CBP.

Remand Results at 7-15.

After Globe clarified for Commerce that Globe was not alleging Ferro-Alliages was further processing subject merchandise, but rather simply transshipping Chinese-origin subject silicon metal through Canada into the United States to circumvent the antidumping duty order, Commerce further explained:

> With respect to the Department's authority to investigate transshipment claims and its administrative practice, the Department acknowledges that it previously misunderstood petitioner's allegations. Until receipt of petitioner's March 16, 2010, comments on the Draft Remand, the Department understood petitioner's allegations to reflect concerns that Ferro Alliages was further processing Chinese-origin silicon metal in Canada prior to exportation to the United States. This understanding was informed by petitioner's submissions regarding Ferro-Alliages' business activities ("crushing, screening, blending, drying, stocking, packaging, and selling various ferroalloy and mineral products") and questions that petitioner requested the Department ask Ferro-Alliages (<u>i.e.</u>, "3. Please state whether your company commingles its inventory silicon metal purchased from different suppliers. Also please describe the method by which your company records and tracks inventory from different suppliers and on what basis your company is able to determine

the supplier of the silicon metal sold."). <u>See</u> No Shipment Comments at 2 and Exhibit 1. Based upon petitioner's March 16, 2010, comments, however, petitioner has clarified that it is alleging that Ferro-Alliages has not properly identified the country-of-origin of its U.S. sales, but petitioner is not alleging that the merchandise was subject to any processing in Canada. Given this, the Department maintains, as stated above and in the <u>Draft Remand</u>, that the Department does not possess the authority to investigate claims regarding transshipment with no further processing in the third country.

The Department's authority to investigate whether merchandise that enters the United States from a country other than the country that is covered by the order, such as merchandise that is exported to the United States from Canada but may be subject to an antidumping duty order covering merchandise from China, is limited. Specifically, the Department's authority to address such scenarios is constrained by the requirement that there must be some processing taking place in the third-country (<u>i.e.</u>, Canada) for the Department to determine whether the merchandise is subject to the order. The governing statute expressly links the Department's authority to the question of whether there is third-country processing taking place. For example, 19 USC 1677j, which concerns the Department's authority to prevent the circumvention of AD/CVD orders through the importation of merchandise completed or assembled in other foreign countries, sets forth that the Department must examine processing of the merchandise in the third-country. <u>See</u> 19 USC 1677j(b)(1). Indeed, the overall approach of 19 USC 1677j instructs the Department to evaluate third-country processing in its analyses. <u>See generally</u> 19 USC 1677j.

The Department's analysis is consistent with this statutory instruction. As explained above and in the <u>Draft Remand</u>, the Department's regulations regarding scope and circumvention inquiries specifically note that scope and circumvention inquiries may be used to determine whether merchandise further manufactured in a third country properly falls under the scope of an antidumping duty order. <u>See</u> <u>Analysis</u> section above and <u>Draft Remand</u> at 8-9. Thus, as stated above, allegations that concern transshipment, without any further processing of subject merchandise in a third country are better addressed under CBP's authority to impose monetary penalties pursuant to fraud, gross negligence, and negligence. <u>See</u> 19 USC 1592.

Remand Results at 18-20.

## Standard of Review

When reviewing Commerce's antidumping determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).  More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole.  Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).  Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and Practice § 10.3[1] (2d. ed. 2009).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record." Edward D. Re,

Bernard J. Babb, and Susan M. Koplin, 8 West's Fed. Forms, National Courts § 13342 (2d ed. 2009).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. Dupont Teijin Films USA, LP v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005); Agro Dutch Indus. Ltd. v. United States, 508 F.3d 1024, 1030 (Fed. Cir. 2007). "[S]tatutory interpretations articulated by Commerce during its antidumping proceedings are entitled to judicial deference under Chevron." Pesquera Mares Australes Ltda. v. United States, 266 F.3d 1372, 1382 (Fed. Cir. 2001); see also Wheatland Tube Co. v. United States, 495 F.3d 1355, 1359 (Fed. Cir. 2007) ("[W]e determine whether Commerce's statutory interpretation is entitled to deference pursuant to Chevron.").

**Discussion**

In its comments to the court on the Remand Results, Globe contends that Commerce's Remand Results are inconsistent with Commerce's actions in Tissue Paper and other administrative precedents. Globe Cmts. on Remand Results at 6-14 ("Globe Cmts."). Globe further contends that Commerce's preference for considering transshipment allegations in scope and circumvention reviews is unreasonable because those reviews do not provide the same relief as administrative reviews. Id. at 15-20. Finally, Globe claims that Commerce's determination is unsupported by substantial evidence because Commerce did not consider additional evidence of Ferro-Alliages' alleged transshipments during the period of review. Id. at 2-6.

Commerce may change an administrative practice so long as it provides a reasoned explanation for the change. See Huvis Corp. v. United States, 570 F.3d 1347, 1354 (Fed. Cir. 2009) ("When it changes a past practice, an agency must also show that there are good reasons for its new policy."). In the Remand Results Commerce concluded that it would no longer investigate a standalone transshipment claim in an administrative review as it had done in Tissue Paper. Commerce re-examined its experience from Tissue Paper, and concluded it was too difficult to analyze all of the evidence related to the standalone transshipment claim within the statutory deadlines for an administrative review given the workload associated with its normal statutory functions. Remand Results at 13. These are good and sufficient reasons to change course.

Globe argues that Commerce understates its authority in concluding that 19 U.S.C. § 1677j limits Commerce's circumvention investigations to instances when there is some processing taking place in a third country. Globe Cmts. at 15; see Remand Results at 18-20. Commerce's interpretation, however, is consistent with section 1677j. Likewise, Commerce's recognition of CPB's authority to investigate fraud, gross negligence, or negligence involving entries of merchandise, and that CPB is better positioned to address a standalone country-of-origin issue is also consistent with 19 U.S.C. § 1592. This is not to suggest that Commerce lacks any statutory authority whatsoever to address a standalone transshipment allegation like Globe's within an administrative review, but there is a difference between Commerce pursuing such an inquiry through the exercise of its gap-filling, policy-making discretion, and the court

directing Commerce to do so by affirmative injunction. Globe has not persuaded the court that Commerce, in addition to its statutory duty to calculate dumping margins for known entries of subject merchandise within an administrative review, must also, within the same administrative review, investigate an importer with no known entries of subject merchandise, that has certified it has no such entries (confirmed by CPB data), and that <u>may</u> be fraudulently evading an antidumping order by mislabeling entries of subject merchandise. Suffice it to say, Commerce's handling of Globe's transshipment allegation represents a permissible construction of the antidumping statute to which the court must defer.

In addition, Globe's argument that CBP plays only a ministerial role in the enforcement of the antidumping law misses the point of Commerce's reference to 19 U.S.C. § 1592 in the Remand Results. Commerce explained that CBP's authority under section 1592 is relevant because Globe's allegation does not involve third-country processing and, thus, Globe is alleging that Ferro-Alliages had simply misidentified the country-of-origin of its merchandise. Remand Results at 15. Commerce correctly explained that "its authority to investigate such country-of-origin claims is not as expansive as the authority granted to CBP." <u>Id.</u> Moreover, Commerce's determination that a standalone transshipment allegation, such as Globe's, is better addressed by CBP has found application in prior administrative proceedings. <u>See, e.g.</u>, <u>Expandable Polystyrene Resins from the Republic of Korea</u>, 65 Fed. Reg. 69,284 (Dep't of Commerce Nov. 16, 2000) (final determ.), Decision Memorandum, cmt. 1.

Globe also argues that Commerce must investigate transshipment allegations within an administrative review and not within a circumvention proceeding because the two proceedings provide different relief (one retrospective and the other prospective). Globe is correct that the two proceedings have different remedies (at least temporally). That difference though is unremarkable at least as far as informing whether Commerce must always consider a standalone transshipment allegation within an administrative review. If, as Globe contends, the retrospective relief of an administrative review is somehow the one and only true remedy of the antidumping statute, then taken to its logical conclusion, Globe's argument "would seem to negate the need for scope/anticircumvention proceedings altogether, and mandate the handling of those issues within an administrative review." Remand Order at 9.

Globe also argues that Commerce erred by not supplementing the administrative review record with information from the scope review record or other sources. Globe Cmts. at 2-4. This argument, however, is not responsive to the Remand Results. Commerce explained that it would no longer investigate a standalone transshipment allegation within an administrative review. Globe's argument assumes otherwise. In any event, the court did not require Commerce to supplement the administrative review record. See Remand Order at 8, 12-13.

## Conclusion

The Remand Results offer a cogent, complete, and reasonable explanation for Commerce's handling of Globe's standalone transshipment allegation against Ferro-Alliages, and therefore must be sustained. Judgment will be entered accordingly.


/s/ Leo M. Gordon
Judge Leo M. Gordon


Dated:      September 1, 2010
            New York, New York